Robert Purbeck
451 W Waterbury Drive
Meridian, ID 83646
208-863-6957
rpurbeck@gmail.com
(Pro-Se)

FEDERAL DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT PURBECK,<br><br>                Plaintiff,<br><br>vs.<br><br>ROBERT MONTY WILKINSON ACTING ATTORNEY GENERAL (PROFESSIONAL CAPACITY),<br><br>                Defendant | Case No.: 1:21-cv-00047-BLW<br><br><br>AMENDED EX-PARTE EMERGENCY APPLICATION FOR A TRO AND PRELIMINARY INJUNCTION |

# AMENDED EX-PARTE EMERGENCY APPLICATION FOR A TRO AND PRELIMINARY INJUNCTION

At issue is whether an AUSA is permitted to violate the 5th amendment self-incrimination clause of another person and introduce evidence established by a willful Miranda violation into a criminal proceeding to a grand jury, to a magistrate judge for probable cause for a warrant, pre-trial probation, pre-trial reports, pleadings or for any other pre-trial criminal proceeding? The AUSA has already indicated on February 8th, 2021 that he intended to perform an additional "prompt" and deliberate 5th amendment violation. Because the new 5th amendment violation ship is currently sailing Plaintiff is seeking an immediate injunction and suppression of Miranda violation tainted evidence in any pretrial criminal hearing to prevent the harm before it becomes a foregone conclusion. Case law establishes that the introduction of the Miranda violation material into a criminal proceeding creates a new and independent 5th amendment due process violation with the only remedy being the suppression of all fruits for a criminal trial. Further the new independent violation of the 5th amendment is clearly established in the 9th circuit as removing qualified and municipal sovereign immunity for the person or entity violating the self-incrimination clause on behalf of the person aggrieved if used in a criminal context. Maybe the prosecutor has absolute immunity, but he is imperiling the finances of the torturers (they should be prosecuted under 18 USC 2340) and those who acquiesced in his push to willfully and deliberately violate plaintiffs natural, inalienable and God-given rights.

AMENDED EX-PARTE EMERGENCY APPLICATION FOR A TRO AND PRELIMINARY INJUNCTION - 1

Plaintiff need not bring his additional claim of the substantive 5th and 14th amendment violations of torture to secure a confession for this motion. Nor does he need to present the 5th amendment due process claim of a deliberate Seibert violation. Nor does he need to bring the multiple 4th amendment violations to the motion. Rather the initial deliberate Miranda violation is sufficient as the password was coerced and that coerced statement alone had the ability to unlock an encrypted trove of allegedly inculpatory information and is the statement that must be suppressed. (Tekoh v. County of Los Angeles 2:16-cv-07297-GW-SK , 18-56414 (9th Cir 2021) Holding a Miranda violation can be sufficient itself to invoke a 5th amendment self-incrimination violation when the un-Mirandized statement is used as the basis for a prosecutors case in chief in a criminal trial. Reversed the civil trial and remanded for a new trial whereby the jury would be properly instructed on the 5th amendment violation.) The password and several others were released before a Miranda statement was given in a custodial environment. Without the encryption password there is absolutely no inevitable discovery that would allow the AUSA to charge a crime in the Northern District of Georgia.

Being advised that you are free to leave or not under arrest is not a defense to not providing Miranda during a police dominated interrogation within the curtilage of the home during a search warrant. There were more than 10-15 armed officers conducting a search inside Plaintiffs home. He was not allowed inside his own home only the curtilage of the home within the back yard on an excessively hot 97F day in direct sunlight for 7.5 hours with hours of continuous interrogation. Meanwhile heat illness had been induced as a tactic to exert pressure on plaintiff to confess falsely to a conspiracy. He was not permitted to leave his chair except when regulated. Nearly everyone on scene was armed and many wore protective body armor. Many of the officers had guns drawn earlier in the day.

Quoting from United States v. Craighead, 539 F.3d 1073 (9th Cir. 2008)

"If a reasonable person is interrogated inside his own home and is told he is "free to leave," where will he go?    The library?    The police station?    He is already in the most constitutionally protected place on earth.    To be "free" to leave is a hollow right if the one place the suspect cannot go is his own home... Similarly, a reasonable person interrogated inside his own home may have a different understanding of whether he is truly free "to terminate the

AMENDED EX-PARTE EMERGENCY APPLICATION FOR A TRO AND PRELIMINARY INJUNCTION - 2

interrogation" if his home is crawling with law enforcement agents conducting a warrant-approved search.   He may not feel that he can successfully terminate the interrogation if he knows that he cannot empty his home of his interrogators until they have completed their search. We must, therefore, consider how to apply the traditional Miranda inquiry to an in-home interrogation.   In addition, if the suspect sees the officers unholstering their weapons within his home, the suspect may reasonably believe that his home is no longer safe from the threat of police force... In short, the presence of a large number of visibly armed law enforcement officers goes a long way towards making the suspect's home a police-dominated atmosphere... Restraint amounting to custody may also be inferred where law enforcement officers permit the suspect to move around the house for brief periods but insist on escorting and monitoring him at all times... The Supreme Court highlighted isolation from the outside world as perhaps the crucial factor that would tend to lead a suspect to feel compelled to provide self-incriminating statements.... The interrogation within Craighead's home was custodial, and Miranda warnings were required. Because the warnings were not given, Craighead's self-incriminating statements should have been suppressed."

Plaintiff affirms to the best of his knowledge under penalty of perjury, that the agents never told him he was not under arrest or free to leave until the very end of the day. At every time he asked they were ambivalent to his arrest status. They absolutely did not tell him this was a voluntary interview and that he was free to leave. The 302's state Plaintiff repeatedly asked how he could be of assistance to the FBI. What an absurdity!!! Plaintiff was courteous to the intruders. However, not until his will was broken by Cruel, Inhuman, Degrading treatment (primarily statutory torture including the inducement of heat illness) was he willing to share any of the information they say he volunteered that had inculpatory value and only so he could receive water and shelter. And those implied inducements were never even provided to plaintiff.

Miranda was further violated by the agents asking questions that were designed to elicit a confession. Plaintiff did not volunteer out of the blue that he had been contacted by a security researcher that had designated him a member of the Dark Overlord before his will had been broken through CIDT. At this point Plaintiff was still under the impression this was an investigation performed by the FBI on behalf of his employer. Do the agents really believe that perjuring themselves so obviously will win over an intelligent Article III judge? Plaintiff worked for a prosecutors office and the county jail. He is not a moron, dullard or an imbecile. Asking questions about Dark net

market usage are clearly questions designed to elicit a confession and required Miranda warnings. Asking questions about stolen credit card numbers or any of the other topics mentioned in the 302 before Plaintiff invoked counsel are all obviously questions that are not routine booking questions. Miranda was not provided until after plaintiff equivocally and then twice unequivocally requested access to a lawyer.

# Argument

**New 5th Amendment Self-Incrimination Violation**

After receiving a copy of the civil lawsuit filed on January 31st, 2021 the AUSA made threats against Plaintiff to his lawyer. On January 29th, 2021 the AUSA had sent a plea agreement to Plaintiffs lawyer that could never be knowingly and voluntarily entered into by Plaintiff as it did not contain Brady information in the possession of the AUSA. (Smith v. Baldwin, 510 F.3d 1127 (9th Cir. 2007) ) The information contained within the plea agreement also contained materially false statements that would cause Plaintiff to engage in an act of perjury. It is a mortal sin to bear false witness and plaintiff could not agree with the false statements morally. Presenting a plea agreement that contains false information falls outside of the prosecutors advocacy role and the lesser standard of qualified immunity is the protection afforded the prosecutor. Further even entertaining a plea agreement when the evidence provided to the AUSA was known to be the result of multiple constitutional violations implicates the AUSA in a separate and distinct 5th amendment violation. The AUSA stepped outside of his role as prosecutor throughout the investigation to perform the role of investigator. He cannot be afforded absolute immunity for threatening to break the law and fabricating evidence to be used at trial after he participated in the investigative functions of the case. (Patterson v Van Arsdel 3:14-cv-00501-BR (9th Cir 2018), Fields v. Wharrie, 740 F.3d 1107 (7th Cir. 2014)) It is unconscionable to believe he can.

Quoting from Higazy,

"A reasonable fact finder could conclude that it was not reasonable for an officer to believe that it was constitutional to coerce a confession and then to hand that information to a prosecutor — without divulging the means by which the confession was acquired — for use in a criminal case... It is equally hard to see how officials whose conduct

AMENDED EX-PARTE EMERGENCY APPLICATION FOR A TRO AND PRELIMINARY INJUNCTION - 4

ultimately impaired a citizen's Fifth Amendment rights could nonetheless escape civil liability merely because a different state official put the statements into evidence at trial" (Higazy v. United States 505 F.3d 161 (2nd Circuit 2007) )

Plaintiff rejected the constitutionally deficient plea agreement. The AUSA then immediately threatened to promptly introduce the Miranda violation tainted evidence to a grand jury. Plaintiff believes that he will also knowingly introduce evidence obtained by torture and numerous other 5th amendment violations thereby depriving plaintiff of his constitutional right against self-incrimination. None of the statements intended to be used can ever be attenuated from the initial 5th and 14th amendment aggravated due process violation of torture.

Quoting from Stoots,

"We thus join the Second Circuit in holding that an officer is not entitled to qualified immunity where "[a] reasonable fact finder could conclude that it was not reasonable for an officer to believe that it was constitutional to coerce a confession and then to hand that information to a prosecutor — without divulging the means by which the confession was acquired — for use in a criminal case." (Stoot v. City of Everett 582 F.3d 910 (9th Circuit 2009))

The cases that prohibit the introduction of coerced confessions into pretrial hearings are already voluminous and growing it is clearly established that there is civil liability for the abusers of this practice. Further it will result in acquittals. Here are some of the additional cases: (Sornberger v. City of Knoxville, 434 F.3d 1006, 1011 (7th Cir. 2006), (Vogt v. City of Hays, No. 15-3266 (10th Cir. 2017)), (Weaver v. Brenner 40 F.3d 527 (2d Cir.1994)) etc...)

# 1. The petitioner is likely to succeed on the merits.

The government is never permitted to deliberately violate the 5th amendment right against self-incrimination in a criminal trial. The prosecutor in this case has threatened to do just that. The prosecutor is using flawed constitutionally unsound doctrines involving voluntariness of confessions that does not even meet the 11th circuits weak standards of due process protections.

AMENDED EX-PARTE EMERGENCY APPLICATION FOR A TRO AND PRELIMINARY INJUNCTION - 5

"The record shows that during the interview with police, Lall was kept alone in his bedroom, isolated from his family, and told that the purpose of any questioning was to protect Lall's family from future harm. These undisputed facts, taken together with Gaudio's representations, compel the conclusion that Lall did not make a "voluntary, knowing and intelligent waiver of his privilege against self-incrimination and his right to counsel." Beal, 921 F.2d at 1434.... In this case, we have found Lall's confession involuntary-a conclusion that compels the suppression of any physical evidence derived from it. The record is clear that the physical evidence seized from Lall's bedroom was the fruit of the coerced confession." (U.S. v. Lall 607 F.3d 1277 (11th Cir 2010))

Plaintiff since filing the lawsuit has identified yet another instance and is currently gathering proofs from the service provider where the case agents involved in his interrogation permanently destroyed on August 26th-27th 2019 and in deliberate bad faith obvious and apparent exculpatory evidence of who was the true operator of an account listed in the probable cause affidavit along with thousands of encrypted email communications that plaintiff had a reasonable expectation of privacy in and even committed aggravated identity theft and Tortious Interference while doing so. There is a Bitcoin receipt paid by the FBI on August 26th to ProtonMail. They entered into an ongoing contractual obligation within plaintiffs account with the service provider placing plaintiff on the hook for the ongoing contract payments and then only paid for one month of service leaving plaintiff to pay 16 months of late fees and unpaid bills they left behind in order to restore access to his own previously free account. They also deliberately destroyed the evidence contained within the service providers care by disabling a protection that plaintiff had intentionally enabled. The emails were encrypted twice with two different layers with two different 2048 bit RSA encryption passwords. The outer layer had a mechanism that allowed for password reset by the provider. The inner layer had no such provision. The time required to decrypt a single layer would take more than 6.4 Quadrillion years without the illegal compelling through torture of the password from Plaintiff. The agents decided to delete the second inner encryption layer for unknowable reasons other than a desire to deliberately destroy evidence. This caused the permanent destruction of emails when plaintiff regained access to his own account. Had the agents not merged the layers he would have been able to restore all of the apparent exculpatory information. (United States v. Zaragoza-Moreira, 780 F.3d 971, 977 (9th Cir. 2015)) This contractual obligation was an unnecessary expense that did not need to be incurred. And the disabling of the second layer protection was done in deliberate bad faith to cause permanent spoliation and destruction of evidence. The password for this account was

AMENDED EX-PARTE EMERGENCY APPLICATION FOR A TRO AND PRELIMINARY INJUNCTION - 6

derived from a pre-Miranda involuntary confession caused by the prohibited interrogation technique of inducement of heat illness and after plaintiff unequivocally invoked his right to counsel and was denied the right. The intrusion into the account was either or both a 4th amendment violation and/or a 5th amendment self-incrimination violation. The government did not have a warrant to access the account on August 21st. Even if they did it was worthless without a password. If they applied for a warrant and gained access through the use of the compelled password they committed a 5th amendment self-incrimination violation and then a 5th amendment due process violation when merging the encryption layers. A separate motion of spoliation will be filed with the court for this deliberate destruction. The agents and the AUSA have destroyed the due process rights of Plaintiff at every possible juncture and this must be stopped by a restraining order. The absolute willful destruction, the perjury to gain access to warrants is because these agents are not afraid of the consequences of constitutional violations. It is how they conduct business. Without consequences for their actions including prosecution under 18 USC 2340 there is no incentive to not violate constitutional boundaries. An injunction is the only relief for Plaintiff that is available.

## 2. The petitioner will suffer irreparable harm from the use of self-incrimination tainted evidence in pretrial criminal proceedings and needs an injunction to effectuate a minor delay.

The government must provide a compelling reason to this court why it feels it is allowed to use 5th amendment protected involuntary confessions in a criminal case before it can be allowed to do so. The case law absolutely prohibits the behavior exhibited by AUSA Herskowitz. He has been given ample notice that his agents engaged in multiple due process rights violations including aggravated due process violations in the form of torture as well as multiple Miranda violations that cannot be remedied under the one exception of Public Safety. The agents cannot argue that they said plaintiff was free to go and not under arrest and then state that they held him for a public safety exception and that is why they violated his rights under Miranda for two hours.

An evidentiary hearing is necessary to determine the voluntariness of any confessions given. Mr. Herskowitz or his conspirators must not be allowed to enter self-incriminating statements that were not voluntary into any criminal proceeding without first being authorized by a competent court.

AMENDED EX-PARTE EMERGENCY APPLICATION FOR A TRO AND PRELIMINARY INJUNCTION - 7

Plaintiff will suffer great harm if he is taken to Georgia where Covid-19 restrictions were lifted during a period of time when cases were accelerating by its morally reprehensible and incompetent governor. Georgia still is located in the upper half of states with the highest prevalence of Covid-19 cases in the country. Plaintiff has co-morbidity concerns that will cause him to likely suffer great harm from getting Covid-19. Plaintiff will suffer reputational harm by the government if it is permitted to repeatedly violate his 5th amendment right to be free from self-incrimination. Further the government is simply not allowed to use involuntary self-incriminating statements in a criminal context ever.

## 3. The Balance of Hardships Favors the Plaintiff

The government has on numerous occasions destroyed multiple pieces of obviously apparent exculpatory evidence, has coerced a confession from plaintiff using statutory torture and has engaged in a pattern of harassment against Plaintiff.

The hardship is obviously born more heavily by plaintiff and to a greater degree than the government. It is unconscionable to allow the government to cause plaintiff yet another new independent 5th amendment self incrimination clause violation until an evidentiary hearing can be held to determine the merits of Plaintiffs claims.

## 4. The Public Interest Favors an Injunction

The majority of the public does not want to see that torture is used by the United States to gather confessions even against terrorists. Reed College held a symposium on torture and its presentation gathered public polling and came to the conclusion that 54.16% of Americans oppose torture to secure confessions. That is still an abhorrently low number, but at least the majority of Americans do oppose torture. (https://www.reed.edu/poli_sci/faculty/rejali/articles/US_Public_Opinion_Torture_Gronke_Rejali.pdf)

The majority of Americans still support as of the latest polling in August 2020, ending police brutality and support movements like Black Lives Matter and other criminal justice change initiatives.

AMENDED EX-PARTE EMERGENCY APPLICATION FOR A TRO AND PRELIMINARY INJUNCTION - 8

https://fivethirtyeight.com/features/support-for-black-lives-matter-surged-during-protests-but-is-waning-among-white-americans/

Torture is the ultimate police brutality. Any of the methods used by these officers in plaintiffs case that involved 5th amendment due process violations and Miranda violations are abhorrent to the majority of Americans. It is in the best interest of the government and the plaintiff that a preliminary injunction and temporary restraining order be placed on the admissibility of statements that are in the possession of the AUSA that he wishes to introduce into a criminal proceeding in violation of clearly established law in this circuit.

## Conclusion

Plaintiff takes AUSA Herskowitz at his word that he intends to or already has introduced involuntary self-incriminating statements to a grand jury and intends to use them again for a probable cause warrant and perhaps a bail proceeding. These are all instances listed in the relevant case law that is prohibited by the various courts who have decided this body of law. It is prohibited conduct!

Plaintiff humbly prays for relief that the district court can grant him and that only the courts can offer in the form of a temporary restraining order and preliminary injunction against having his involuntary self-incriminating statements used against him in a criminal proceeding until an evidentiary hearing can be held on the merits of doing so.

Dated this 21st day of February, in the year of our Lord 2021.

_____

Robert Purbeck (Pro-Se)

AMENDED EX-PARTE EMERGENCY APPLICATION FOR A TRO AND PRELIMINARY INJUNCTION - 9