UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| ROBERT PURBECK,<br><br>                    Plaintiff,<br><br>      v.<br><br>ROBERT MONTY WILKINSON et al,<br><br>                    Defendants. | Case No. 1:21-cv-00047-BLW<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Robert Purbeck's Complaint as a result of his in forma pauperis request. Dkt. 1. The Court now reviews the Complaint to determine whether it or any of the claims contained therein should be summarily dismissed under 28 U.S.C. § 1915. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order dismissing this case without prejudice.[1]

1.      **Screening Requirement**

The Court must review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or

---

[1] The Court will consider Plaintiff's Motion for Return of Property Pursuant to Rule 41(g) and Motion to Quash the Search Warrant (Dkt. 2) in another Order.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 1

seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.

§§ 1915(e)(2)(B).

### 2.    Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim

for relief under Rule 8 if the factual assertions in the complaint, taken as true, are

insufficient for the reviewing court plausibly "to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.* "[D]etailed factual allegations" are not

required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-

harmed-me accusation[s]." *Id.* (internal quotation marks omitted).  If the facts pleaded are

"merely consistent with a defendant's liability," or if there is an "obvious alternative

explanation" that would not result in liability, the complaint has not stated a claim for

relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted).

Furthermore, a court is not required to comb through a plaintiff's exhibits or other filings

to determine if the complaint states a plausible claim.[2]

---

[2] Therefore, in its review under §§ 1915, the Court has reviewed only the Complaint found at Dkt. 1, not the affidavit or other documents referenced in Dkt. 6. *See also* General Order 342, *In Re: Procedural Rules for Prisoner Civil Case Filings and for Prisoner E-Filing Program*, § A(1)(b)-(c) ("No exhibits may be attached to a complaint or any type of amended complaint, except those showing exhaustion of administrative remedies[,] [and] [n]o affidavits may be attached to a complaint or any type of amended complaint.").

Additionally, a plaintiff cannot simply restate standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and plaintiff's injury or damage. *See Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

The in forma pauperis statute gives screening judges "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). "Examples of the latter class are claims describing fantastic or delusional scenarios." *Neitzke*, 490 U.S. at 328; *see also Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005) (a case is frivolous if it is "of little weight or importance: having no basis in law or fact"). Even a complaint that is not obviously delusional, but does not state enough facts to state a claim to relief that is plausible on its face, is deficient. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### 3.    Factual Allegations[3]

#### i.    Search Warrant Issued on August 19, 2019

On August 19, 2019, a magistrate judge issued a warrant to search Plaintiff's residence at the request of Assistant United States Attorney Michael Herskowitz

---

[3] The facts set forth in this section are based on the allegations in the complaint, which are accepted as true in conducting this initial review of the adequacy of the complaint.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 3

("Herskowitz"). *Compl*., Dkt. 1 at 4. In support of the application for the search warrant, Agent Roderick Coffin III ("Agent Coffin") presented an affidavit detailing IP addresses that indicated a cluster of cryptocurrency activity ("Bitcoin clustering") *Id*. at 5. Plaintiff alleges that Agent Coffin misrepresented to the Magistrate Judge the significance of the bitcoin cluster and the resulting implication that Plaintiff engaged in criminal activity. Plaintiff further alleges that the Government issued an unlawful administrative subpoena to access bank account and private email information. *Id*. at 8-9. According to plaintiff, the warrant was issued as a result of perjured and false testimony from non-expert witnesses. *Id*. at 8.

As part of the investigation into Plaintiff, the Government also investigated Silk Alpaca Corporation ("Corporation"), an e-commerce corporation that sold popular American goods to European markets on Amazon UK and mined cryptocurrency assets from 2013 to 2019. *Id*. at. 6-7.  Plaintiff was a shareholder of that Corporation. *Id*. at 6. Plaintiff alleges that the Government illegally seized assets belonging to the Corporation, including crucial computers and hardware. Plaintiff further alleges the Government illegally surveilled him and the Corporation and seized "millions upon 10s of millions of files." *Id*. at 10-13; 18.

### ii.    Arrest on August 21, 2019

On August 21, 2019, Agents Coffin, Clark Harshbarger ("Agent Harshbarger"), and James Pinette ("Agent Pinette") executed the search warrant at Plaintiff's residence. *Compl*., Dkt. 1 at 19. The agents questioned Plaintiff outside and had him sit in direct sunlight. *Id*. 21. Plaintiff did not feel free to leave and was not given his *Miranda*

warnings until after he complied with questioning. *Id*. at 23. Furthermore, the agents never provided Plaintiff water or food; he was given only coffee for the entire 7.5-8-hour interrogation period. *Id*. at 22.

During questioning, the agents employed aggressive interrogation tactics such as screaming and assault, with one agent holding his hand on his gun as he screamed at Plaintiff. *Id*. at 24. Plaintiff alleges he feared for his life. *Id*. Plaintiff attempted to maintain his silence during the interrogation, but the heat exhaustion and dehydration caused him to waver and he revealed the password to his computer and a confession. *Id*. at 27.

After revealing his password, Plaintiff signed the *Miranda* form and agents questioned him for hours about a group known as "The Dark Overlord." *Id*. at 29. Plaintiff alleges he was never involved with the group, but agents continued to question him. The agents ignored Plaintiff's signs of dehydration, severe heat exhaustion, and heatstroke. *Id*. at 32.

Eventually, the agents completed the search of Plaintiff's residence. Plaintiff alleges that the agents caused intentional damage to his house, unlawfully took items, and that Agent Pinette sexually assaulted him by feeling his genitals for a minute during the search incident to arrest. *Id*. at 36-38.

## 4.  Discussion

The Court has reviewed Plaintiff's lengthy complaint and finds much of his submission to be an elaborate narrative rather than a short and plain statement. *See* Fed. R. Civ. P. 8(a). In any event, Plaintiff has not alleged sufficient facts to proceed with the

claims he sets forth in his Complaint. The Court will, however, grant Plaintiff 28 days to amend the Complaint. The Court will provide analysis to the extent possible, and any amended complaint should take into consideration the following.

### A.    *Section 1983 Claims*

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Here, Plaintiff alleges claims against federal agents who are not acting under color of state law. As such, § 1983 does not provide a cause of action. However, the Court will liberally construe Plaintiff's claims as *Bivens* claims.

The United States Supreme Court's decision in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics* permits plaintiffs to sue a federal officer in his or her individual capacity for damages for violating the plaintiff's constitutional rights. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). "Actions under § 1983 and those under *Bivens* are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*." *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991).

### 1)  4th Amendment

#### a.  The Search Warrant

Plaintiff claims the search warrant lacked probable cause; therefore, its issuance violated his Fourth Amendment right to be free from unreasonable searches and seizures.

Specifically, Plaintiff alleges that the magistrate judge improperly issued the warrant and that Agent Coffin made untruthful statements to the magistrate judge.

Plaintiff claims that the magistrate judge improperly considered non-expert testimony and "pseudoscience" in issuing the search warrant. *Compl.*, Dkt. 1 at 5-8. He claims that Agent Coffin was not qualified as an expert witness under *Daubert*[4] and that the magistrate judge should not have relied on his testimony or other evidence presented, such as the "bitcoin clustering" scheme. *Id*. Although Plaintiff appears to claim the magistrate judge violated his Fourth Amendment rights in issuing the search warrant, the magistrate judge is not a named defendant. *See id*. at 8. Even if the magistrate judge was a named defendant, he would be entitled to judicial immunity based on the facts Plaintiff alleges. *See Stump v. Sparkman*, 435 U.S. 349, 359 (1978) ("[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."). Furthermore, Plaintiff cannot suppress the search warrant in this ancillary civil proceeding, as the exclusionary rule is not an appropriate remedy. *See United States v. Calandra*, 414 U.S. 338, 354 (suppression is typically a remedy in criminal proceedings).[5]

Plaintiff also claims that Agent Coffin committed judicial deception by submitting an untruthful affidavit and lying under oath in violation of Plaintiff's Fourth Amendment

---

[4] *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993). Plaintiff is advised that the *Daubert* standard is not necessary in search warrant issuances. *See United States v. Pirosko*, 2013 U.S. Dist. LEXIS 146754, * 9 (N.D. Ohio 2013) ("There is no precedent or authority demanding that the *Daubert* reliability standard must be applied to investigative procedures used by law enforcement in order for the search warrant to contain probable cause for the search").
[5] The Court takes judicial notice that Plaintiff has since been Indicted in Northern District of Georgia.

rights. The Fourth Amendment prohibits a search conducted pursuant to 'an ill-begotten or otherwise invalid warrant" issued through judicial deception. *See Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011). To state a claim for judicial deception, Plaintiff must "(1) establish that the warrant affidavit contained misrepresentations or omissions material to the finding of probable case, and (2) make a 'substantial showing' that misrepresentations or omissions were made intentionally or with reckless disregard for the truth." *Id*. To establish materiality, Plaintiff must show that a search warrant would not have issued had the affidavit contained the truthful or omitted information. *See Lombardi v. City of El Cajon*, 117 F.3d 1117, 1126 (9th Cir. 1997).  Here, Plaintiff has not pled sufficient facts establishing that Agent Coffin knowingly misrepresented material facts to the magistrate judge other than conclusory statements that Agent Coffin acted with reckless disregard for the truth. *See Compl*., Dkt. 1 at 4.  *Iqbal*, 556 U.S. at 678. Nor has Plaintiff established that Agent Coffin is unentitled to qualified immunity on a claim that the search warrant lacked probable cause. *See Chism v. Washington*, 661 F.3d 380, 386 n. 9 (9th Cir. 2011) (explaining the difference between a judicial deception claim from the "garden-variety claim that a warrant lacked probable cause on its face," in which the arresting officer likely enjoys qualified immunity).

Plaintiff further claims that Herskowitz presently intends to destroy the files and hardware belonging to Plaintiff's Corporation collected during the search if Plaintiff does not plead guilty. Essentially, Plaintiff is claiming Herskowitz is holding these materials "hostage" in violation of the Fourth Amendment. *Compl*., Dkt. 1 at 13-14. In support, Plaintiff relies on *United States v. Tamura*, 694 F.2d 591 (9th Cir. 1982). In *Tamura*, the

INITIAL REVIEW ORDER BY SCREENING JUDGE - 8

Ninth Circuit in dicta opined that the Government's refusal to return seized documents not described in the search warrant was likely improper. *Id*. at 596. Here, Plaintiff does not necessarily have standing as a shareholder of the Corporation to bring this claim. *See RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1057 (9th Cir. 2002) ("In general, shareholders lack standing to assert an individual § 1983 claim based on harm to the corporation. . .[unless the shareholder] has been 'injured directly and independently from the corporation.'") (internal citation omitted). In any event, Plaintiff has not alleged sufficient facts that the files and hardware collected were not properly mentioned in the search warrant. Instead, Plaintiff appears to be challenging the sufficiency of the warrant itself. As explained, Plaintiff has not properly established this claim.

### b.  Search Warrant Execution

Plaintiff further claims Agent Coffin and Herskowitz violated his Fourth Amendment rights during the execution of the search warrant. Specifically, Plaintiff claims agents stole items not mentioned in the search warrant and that Herskowitz unconstitutionally withheld the seized items under the guise of sealing the affidavit and search warrant, of which Plaintiff claims he did not receive a copy for 9 months. *Compl*., Dkt. 1 at 53-54.

Simply, Plaintiff's statement that "the agents took closed loop gift cards given to Mr. Purbeck as gifts and did not record the serial numbers on the inventory sheet. This allows for theft by the agents. . . [o]ther items were stolen by agents…" is scarce in alleged facts and conclusory in its assumption, and therefore insufficiently pled. *Id*. at 53. *See Cannon v. Bowman*, 2017 U.S. Dist. LEXIS 128230, at *6-7 (C.D. Cal. 2017)

INITIAL REVIEW ORDER BY SCREENING JUDGE - 9

(concluding that while "the removal of personal property may constitute a 'seizure' within the meaning of the Fourth Amendment," a conclusory allegation with unspecified circumstances is insufficient to meet a factual basis for a claim). Furthermore, Plaintiff has failed to allege with particularity which agents he is accusing of theft or how this alleged theft rises to a Fourth Amendment violation. *See Jessop v. City of Fresno*, 936 F.3d 937, 941-42 (9th Cir. 2019) (explaining an officer's alleged theft of property after it had been validly seized may have Fourth Amendment implications). Accordingly, Plaintiff cannot proceed on this claim, but will be granted leave to amend. In the amended complaint, Plaintiff must describe with particularity what items were improperly seized and by whom.

Plaintiff also claims that Agent Coffin violated his rights by requesting to seal the search warrant. *Compl*., Dkt. 1 at 54. "[C]ourts have inherent power, as an incident of their constitutional function, to control papers filed with the courts within certain constitutional and other limitations." *In re Sealed Affidavits(s)*, 600 F.2d 1256, 1257 (9th Cir. 1979). There is no First Amendment right to sealed search warrants while a pre-indictment investigation is ongoing. *Times Mirror Co. v. United States*, 873 F.2d 1210, 1216 (9th Cir. 1989).  However, individuals whose property is the subject of a search pursuant to a search warrant can have a pre-indictment right of access to the materials grounded in the Fourth Amendment, subject to an analysis of the compelling governmental interest in sealing. *See In re Searches and Seizures*, 2008 Dist. LEXIS 107087, *13 (E.D. Cal. 2008). Here, Plaintiff has not established that the warrant was not properly sealed pursuant to a lawful investigation. He simply alleges that the government

withheld items to be searched. Moreover, Plaintiff admits that he received the warrant and its attachments. *Compl.*, Dkt. 1 at 53-54.

Next, Plaintiff claims that Agent Pinette violated his rights during the search incident to arrest. Specifically, he claims that Agent Pinette "spent at least a solid minute feeling Mr. Purbeck's genitals to humiliate Mr. Purbeck." *Id.* at 36. Some courts have analyzed civil rights claims involving sexual assault committed by law enforcement officers under the substantive due process clause of the Fourteenth Amendment. *See Rogers v. City of Little Rock*, 152 F.3d 790, 796-97 (8th Cir. 1988). However, sexual assault claims after seizure are better classified as "excessive force" claims under the Fourth Amendment. *See Fontana v. Haskin*, 262 F.3d 871, 881 (9th Cir. 2001). The Fourth Amendment requires that seizures be reasonable. As part of that analysis, the Court will look to the countervailing government interests at stake. *Graham v. Connor*, 490 U.S. 386, 396 (1989). There is clearly no countervailing government interest in sexual misconduct. *Fontana*, 262 F.3d at 878-80. "Gratuitous and completely unnecessary acts of violence by the police during a seizure violate the Fourth Amendment." *Id.* at 880. Assuming the facts of Plaintiff's complaint to be true, Agent Pinette engaged in unreasonable and impermissible touching of Plaintiff's genitals during the search incident to arrest.

Plaintiff further claims that, in executing the search warrant, agents intentionally caused damage to his house. *Compl.*, Dkt. 1 at 38. Officers executing a search warrant occasionally must damage property in order to perform their duty. *See Liston v. County of Riverside*, 120 F.3d 965, 979 (9th Cir. 1997). Therefore, the destruction of property does

INITIAL REVIEW ORDER BY SCREENING JUDGE - 11

not always rise to a Fourth Amendment violation. However, "unnecessarily destructive behavior, beyond that necessary to execute a warrant effectively, violates the Fourth Amendment." *Id*. at 979. Here, Plaintiff has not indicated which agents acted with intentional or reckless disregard and caused the damage. Furthermore, Plaintiff has not alleged sufficient facts showing that the damage caused was not within the lawful scope of executing the search warrant. He simply pleads that agents "had intentionally caused incredible damage to the house" by throwing items on the floor and breaking items. While Plaintiff's claim may indeed rise to a constitutional violation, he has not sufficiently pled so here.

Plaintiff claims that Herskowitz violated his privacy rights by conducting illegal email collection. *Compl*., Dkt. 1 at 9-10; 30 He claims this email collection violated the Ninth Circuit's decision in *United States v. Moalin*, 973 F.3d 977 (9th Cir. 2020), which held that "[t]he Fourth Amendment requires that a person subject to a government search receive notice of the search, absent 'exigent circumstances.'" *Id*. at 999. The *Moalin* court balanced the need for secrecy during an investigation with a defendant's rights and concluded that, at minimum, "the Fourth Amendment requires notice to a criminal defendant when the prosecution intends to enter into evidence or otherwise use or disclose information obtained or derived from surveillance of that defendant conducted pursuant to the government's foreign intelligence authorities." *Id*. at 1000. But "[n]otice is distinct from disclosure." *Id*. at 1001. In fact, Plaintiff's Complaint alleges that he received notice of the search warrant. *See Compl*., Dkt. 1 at 31. Again, Plaintiff is attempting to challenge the legitimacy of the warrant. Moreover, the Court is dubious

about whether *Moalin* protections apply to Plaintiff (apart from ordinary Fourth Amendment protections in the context of a criminal prosecution), as *Moalin* pertained to the Foreign Intelligence Surveillance Act and Plaintiff has not alleged that the Government implemented foreign intelligence authorities. *See Moalin*, 973 F.3d at 1000-01.

### 2) Eighth Amendment

Plaintiff claims Agent Pinette and Agent Coffin violated his Eighth Amendment rights by employing impermissible interrogation tactics while Plaintiff was in custody. He claims the agents tortured him by questioning him for hours in hot sunlight without providing food or water. As a result of Defendants' actions, Plaintiff claims he suffered heat stroke, dehydration, and sunburn. While Plaintiff may have a viable claim, it cannot be based upon a violation of the Eight Amendment.

"The Eighth Amendment prohibits cruel and unusual punishment in penal institutions. *Wood v. Beauclair*, 692 F.3d 1041, 1045 (9th Cir. 2012). The status of the individual alleging a constitutional violation determines whether the Eighth Amendment applies. The claims of convicted prisoners are considered under the Eighth Amendment, while those of detainees who have yet to be convicted are considered under the Fifth and Fourteenth Amendment's Due Process Clause. *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016). Plaintiff has not been convicted, nor was he incarcerated when he was arrested. Therefore, he cannot bring a claim of cruel and unusual punishment under the Fifth, Eighth, or Fourteenth Amendments.

The Supreme Court has recognized that coercive interrogation tactics may violate the Fourteenth Amendment's guarantee of substantive due process; however, "only the most egregious official conduct" gives rise to such a claim. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Plaintiffs must show that defendants intended to injure the plaintiff "in some way unjustifiable by any government interest." *Stoot v. City of Everett*, 582 F.3d 910, 929 (9th Cir. 2009) (quoting *Lewis*, 523 U.S. at 849).

Additionally, Plaintiff may raise an unreasonable seizure claim. *See Graham*, 490 U.S. at 395 ("The Fourth Amendment provides an explicit textual source of constitutional protection against [certain] … physically intrusive governmental conduct."). Such claims are "analyzed under the Fourth Amendment's 'objective reasonableness standard.'" *Saucier v. Katz*, 533 U.S. 194, 204 (2001). The "reasonableness" of an officer's actions "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. This analysis requires "careful attention to the facts and circumstances in each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.

Here, Plaintiff's allegations of physical and mental abuse may rise to a cognizable constitutional claim. As such, the Court will allow Plaintiff to amend his complaint to assert an appropriate claim under the proper avenue, taking into consideration the above.

**3) Fifth Amendment**

INITIAL REVIEW ORDER BY SCREENING JUDGE - 14

Plaintiff claims the agents violated his Fifth Amendment rights through the solicitation of incriminating answers and passwords before his *Miranda* warnings were given. *Compl.*, Dkt. 1 at 25-29. *Miranda v. Arizona*, 384 U.S. 436 (1966). However, an alleged *Miranda* violation cannot give rise to a *Bivens* claim. *See Chavez v. Martinez*, 538 U.S. 760, 772 (2003) ("Rules designed to safeguard a constitutional right. . .do not extend the scope of the constitutional right itself, just as violations of judicially crafted prophylactic rules do not violate the constitutional rights of any persons."). Furthermore, Plaintiff's alleged *Garrity* violation (*Compl.*, Dkt. 1 at 50) fails as *Garrity* concerned the subsequent use of coerced statements in criminal proceedings. *See Garrity v. New Jersey*, 385 U.S. 493, 500 (1967). Plaintiff has alleged no such proceeding, and he cannot cast his civil Complaint as a motion to suppress.

Plaintiff also claims Herskowitz violated his Fifth Amendment due process rights by subjecting him to a polygraph test. *See Compl.*, Dkt. 1 at 40 ("In another willful breach of due process the AUSA asked for a polygraph to be performed on Mr. Purbeck…"). However, Plaintiff does not explain how this was a due process violation; to the contrary, he acknowledges that "[t]here is not a lot of Federal case law regarding the nature of polygraph due process violations." *Id*. at 42. Accordingly, Plaintiff's claim is insufficiently pled as he has failed to state a cause of action.

Plaintiff next claims that Herskowitz deprived him of his property in violation of his Fifth Amendment due process rights. *Id*. at 14-15. He claims that Herskowitz is "unlawfully fining him without judicial authorization or due process and holding hostage his and the corporations [sic] possessory rights to tolls of their livelihood." *Id*. at 14. In

support, Plaintiff cites *United States v. Levesque*, 546 F.3d 78 (1st Cir. 2008), which pertained to forfeiture and the excessive fines clause under the Eighth Amendment. *Id.* at 85. As explained, the Eighth Amendment is not applicable here. Therefore, Plaintiff has failed to state a cause of action or explain how his claim is based on a cognizable legal theory.

### B.    Other Federal Claims

Plaintiff also seeks relief under the United Nations Convention Against Torture (CAT), Right to Financial Privacy Act (RFPA), and the Racketeer Influenced and Corrupt Organizations Act (RICO). However, he is not entitled to relief on these claims.

### 1)    Convention Against Torture

Plaintiff claims that he was subjected to torture on August 21 and that Herskowitz's acquiescence and failure to investigate the agents' conduct violated the CAT. *See Compl.*, Dkt. 1 at 43-48, 61 However, the CAT does not provide a private right of action or civil redress within the United States. *See Renkel v. United States*, 456 F.3d 640, 643-44 (6th Cir. 2006); *see also Sepulveda v. UMass Correctional Health, Care*, 160 F. Supp. 3d 371, 388-89 (D. Mass. 2016) (holding the Convention does not provide civil redress within the United States), *Torrez v. Correctional Corp. of America*, 2008 WL 191983, *3 n. 5 (D. Ariz. 2008) (holding the Convention does not provide a private right of action).

### 2)    Right to Financial Privacy Act

Next, Plaintiff claims he did not receive proper notice or an opportunity to challenge the subpoenas under the FRPA that the Government used for Coinbase, Discover Financial, and Bitpay to secure a search warrant. *Compl.*, Dkt. 1 at 9, 54.

The RFPA restricts the government's ability to access a person's financial records. 12 U.S.C.S. § 3401 et seq. It was enacted in response to *United States v. Miller*, 425 U.S. 435 (1976), which held that a customer of a financial institution had no legitimate expectation of privacy under the Fourth Amendment. *Id*. at 442. Congress intended the Act to protect financial institution customers while simultaneously permitting legitimate law enforcement activity by requiring agencies to follow specific procedures when obtaining a customer's financial records. *See Hohman v. Eadie*, 894 F.3d 776, 781 (6th Cir. 2018). As such, the Act provides for several exceptions, such as authorizing a delay of notice when the government pursues legitimate law enforcement inquiry. 12 U.S.C.S. § 3413(g).

As pled, Plaintiff has not asserted facts sufficient to establish the government violated his statutory rights under RFPA. He asserts that the "administrative subpoena was *most likely* issued illegally under emergency life threatening pretenses to willfully subvert the customer notification requirement of the 1978 Right to Financial Privacy Act," and "the government had no authority to bypass the requirements of the RFPA." (emphasis added). *Compl.*, Dkt. 1 at 9, 54. However, these speculative and conclusory allegations are insufficient as a factual basis to state claim for relief.

**3)     RICO**

Plaintiff claims that Herskowitz, as a member of the Department of Justice, violated RICO by refusing to return computer hardware and software belonging to the Corporation and by depriving Plaintiff as a shareholder of that Corporation. *Compl*., Dkt. 1 at 58. In support, Plaintiff alleges that "FBI/DOJ" is a "continuous ongoing criminal enterprise." *Id*. However, Plaintiff cannot state a claim against the United States for the actions of its agencies under RICO. Absent an express waiver of sovereign immunity, a RICO action may not be brought against the United States. *See United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 879 F.2d 20, 23-27 (2d Cir. 1989) (in evaluating congressional intent, Congress did not mean to expose the government to RICO liability); *see also* Beverly v. Fed. Elections Comm'n, 2009 U.S. Dist. LEXIS 5699, *3 (E.D. Cal. 2009) (noting that Courts have held that RICO does not waive the sovereign immunity of the United States). Moreover, the Ninth Circuit has held that government entities are not capable of forming the criminal intent necessary to support the predicate RICO offenses. *Lancaster Community Hosp. v. Antelope Valley Hosp. Dist*., 940 F.2d 397, 404 (9th Cir. 1991). Nor can a theory of *respondeat superior* subject the Government to RICO liability through the actions of its officials. *Id*.

**5.    Opportunity to Amend**

The Court now considers whether to allow Plaintiff an opportunity to amend the Complaint. Amendments to pleadings are governed by Rule 15 of the Federal Rules of Civil Procedure. That rule states that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has explained the reasoning behind allowing the opportunity to amend:

> In exercising its discretion with regard to the amendment of
> pleadings, a court must be guided by the underlying purpose
> of Rule 15—to facilitate decision on the merits rather than on
> the pleadings or technicalities. This court has noted on several
> occasions that the Supreme Court has instructed the lower
> federal courts to heed carefully the command of Rule 15(a) ...
> by freely granting leave to amend when justice so requires.
> Thus Rule 15's policy of favoring amendments to pleadings
> should be applied with extreme liberality.

*Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (internal citations, quotation

marks, and alterations omitted). "In the absence of any apparent or declared reason—such

as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to

cure deficiencies by amendments previously allowed, undue prejudice to the opposing

party by virtue of allowance of the amendment, futility of amendment, etc.," it is

appropriate for a court to grant leave to amend. *Foman v. Davis*, 371 U.S. 178, 182

(1962).

This liberal amendment policy is even more important with respect to pro se

plaintiffs, who generally lack legal training. Courts must liberally construe civil rights

actions filed by pro se litigants so as not to close the courthouse doors to those truly in

need of relief. *Eldridge*, 832 F.2d at 1135, 1137. A pro se litigant bringing a civil rights

suit must have an opportunity to amend the complaint to overcome deficiencies unless it

is clear that those deficiencies cannot be overcome by amendment. *Id.* at 1135-36.

Although several factors contribute to the analysis of whether a plaintiff should be

allowed an opportunity to amend, futility alone can justify denying such an opportunity.

*Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

The Court will allow Plaintiff to amend his Complaint. If Plaintiff chooses to amend the Complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alteration omitted)). If Plaintiff wishes to proceed on his sexual assault claim, which has been sufficiently pled here, he must include it in his amended complaint.

Further, any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa*

*County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate numbered paragraph. The amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as an "Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files an amended complaint, Plaintiff must also file a "Motion to Review the Amended Complaint." If Plaintiff does not amend within 28 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1.    Plaintiff has 28 days within which to file an amended complaint as
      described above. If Plaintiff does so, Plaintiff must file (along with the
      amended complaint) a Motion to Review the Amended Complaint. If

Plaintiff does not amend within 28 days, this case may be dismissed without further notice. Any amended complaint will be limited to 15 pages.

2.     Plaintiff's Motion for Appointment of Counsel (Dkt. 4) is **DENIED**.

3.     Plaintiff's Request to Add Photo Exhibit (Dkt. 13) is **DENIED.**

DATED: April 20, 2021

_____

B. Lynn Winmill
U.S. District Court Judge

INITIAL REVIEW ORDER BY SCREENING JUDGE - 22