UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT PURBECK, | Case No. 1:21-cv-00047-BLW |
| Plaintiff, | |
| v. | **INITIAL REVIEW ORDER OF AMENDED COMPLAINT BY SCREENING JUDGE** |
| ROBERT MONTY WILKINSON et al, | |
| Defendants. | |

The Clerk of Court conditionally filed Plaintiff Robert Purbeck's Amended

Complaint as a result of his in forma pauperis request. Dkt. 19. The Court now

reviews the Amended Complaint to determine whether it or any of the claims

contained therein should be summarily dismissed under 28 U.S.C. § 1915. Having

screened the First Amended Complaint, the Court enters the following order

allowing Purbeck to proceed on the excessive force, Fourth Amendment right to be

free from unreasonable searches and seizures, and procedural due process claims.

**1.    Application for In Forma Pauperis Status**

Purbeck filed an Application to Proceed In Forma Pauperis. Dkt. 5. Under 28

U.S.C. § 1915(a)(1), a court may allow a litigant to proceed without prepayment of fees if

he submits a proper IFP application. Whether to grant an IFP application is based solely

on the economic eligibility of the plaintiff. Here, Purbeck has signed an affidavit in

INITIAL REVIEW ORDER OF AMENDED COMPLAINT BY SCREENING JUDGE - 1

support of his IFP application declaring under penalty of perjury that his monthly expenses take up nearly the entirety of his $2290 monthly income. Dkt. 5. He notes that his income may decrease pending a federal criminal indictment. Dkt. 5.  Based on this information, the Court will grant the IFP application.

**2.    Screening Requirement**

The Court must review complaints filed in forma pauperis to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

**3.    Pleading Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Detailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusations." *Id.* (cleaned up). If

the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (cleaned up). Furthermore, a court is not required to comb through a plaintiff's exhibits or other filings to determine if the complaint states a plausible claim.

A plaintiff cannot simply restate standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and plaintiff's injury or damages. *See Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

The in forma pauperis statute gives screening judges "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). "Examples of the latter class are claims describing fantastic or delusional scenarios." *Neitzke*, 490 U.S. at 328; *see also Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005) (a case is frivolous if it is "of little weight or importance: having no basis in law or fact"). Even a complaint that is not obviously delusional,

but that does not state enough facts to state a claim to relief that is plausible on its face, is deficient. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## 4.   Factual Allegations[1]

### A.   *Search Warrant Issued on August 19, 2019*

On August 19, 2019, a Magistrate Judge issued a warrant to search Purbeck's residence at the request of Assistant United States Attorney Michael Herskowitz ("Herskowitz"). Am. Comp., Dkt. 19 at ¶ 6. In support of the application for the search warrant, Agent Roderick Coffin III ("Coffin") presented evidence from transactions that occurred five years previously. *Id*. Purbeck alleges that the transactions had no relation to him and were connected to houses in other states. *Id.* According to Purbeck, the warrant was issued as a result of false testimony from Coffin. *Id*.

### B.   *Interrogation and Arrest on August 21, 2019*

On the morning of August 21, 2019, Coffin, Agent Clark Harshbarger ("Harshbarger"), and Agent James Pinette ("Pinette"), accompanied by a dozen other armed agents, executed the search warrant at Purbeck's residence. *Id*. at ¶ 7-9. Harshbarger showed Purbeck a search warrant and asked if he would like to read it. *Id.* According to Purbeck, however, Pinette interrupted, stating that "There will

---

[1] The facts set forth in this section are based on the allegations in the amended complaint, which are accepted as true in conducting this initial review of the adequacy of the amended complaint.

be time for that later." *Id.* Purbeck also alleges that he did not have sufficient time to verify the contents of the warrant because Assistant United States Attorney Nathan Kitchens ("Kitchens") "ordered it removed from his hands." *Id.* at ¶ 47.

Coffin and Pinette interviewed Purbeck outside. *Id.* at ¶ 8, 11. The agents instructed Purbeck to sit in direct sunlight. *Id.* at ¶ 11-12. Pinette periodically directed Purbeck to move his chair to ensure that the sun blinded Purbeck. *Id.* While sitting outside, Purbeck became dehydrated from sweating, lack of water, and a diuretic pill taken the night before. *Id.* at ¶ 13, 22. He became sunburned, began to experience heat exhaustion, and struggled to think clearly. *Id.* at ¶ 16, 22.

Purbeck did not feel free to leave and was not given his *Miranda* warning. *Id.* at ¶ 16. During questioning, the agents employed aggressive interrogation tactics such as screaming and assault, with one agent holding his hand on his gun as he screamed at Purbeck. *Id.* at ¶ 14, 22. Purbeck alleges he feared for his life. *Id* at ¶ 15.

The agents informed Purbeck that representatives for his employer, Ada County, would soon join the interview. *Id.* at ¶ 12. Purbeck consequently believed that the federal agents were acting on behalf of Ada County. *Id.* at ¶ 19. He felt obligated to answer the agents' questions truthfully, as required by Ada County policy. *Id.* Purbeck told the agents that he made accounts for and visited websites

that sold illegal contraband, such as Silk Road and Alphabay, at his bosses' requests. *Id.* at ¶ 20-21.

When asked about a specific online account, Purbeck asked whether he needed a lawyer. *Id.* at ¶ 22. Coffin told Purbeck he did not need a lawyer and refused Purbeck's requests to call a lawyer. *Id.* Coffin then began interrogating Purbeck again, warning him that he ought to contact a lawyer soon because they were "conducting simultaneous raids across the country," and "only the first person to answer [would] get a deal from the prosecutor." *Id.*

Purbeck attempted to stay silent during the interrogation. *Id.* at ¶ 23. The heat, physical discomfort, and denial of access to a lawyer, however, caused him to waver. *Id.* He revealed the password to his computer and made inculpatory statements. *Id.* at ¶ 24. Purbeck additionally wrote down passwords to different accounts, which allowed the FBI to take control of those accounts. *Id.* at ¶ 26. Purbeck signed an advice of rights form, but alleges that he did not see the full form before signing. *Id.*

Ada County Detective Ryan Pacheco ("Pacheco") and county employee Steven O'Meara ("O'Meara") arrived at Purbeck's house about four hours after the federal agents. *Id.* at ¶ 33, 38. According to Purbeck, he was extremely sunburned and was displaying "obvious signs of heatstroke, such as slurring words, and the inability to speak cogently." *Id.* at ¶ 38. Nevertheless, Pacheco and O'Meara did

not intervene or provide medical care. *Id.* Instead, they asked him questions about his employment and potential computer breaches that Purbeck alleges did not involve parties in Ada County or Idaho. *Id.* at ¶ 33. Although Pacheco made audio recordings of this interview, Purbeck has learned through counsel that the recordings have been destroyed. *Id.* at ¶ 36.

Eventually, the agents completed their search of Purbeck's residence. During the search incident to arrest, Purbeck alleges that Pinette sexually assaulted him by feeling his genitals for a minute. *Id.* at ¶ 43-44. In addition, Purbeck alleges that Harshbarger left an inventory sheet, but that the agents unlawfully took several items. *Id.* at ¶ 46, 48. Agents also seized online accounts and accessed private messages linked to those accounts. *Id.* Purbeck alleges that Pinette preserved those messages, including "very intimate and private communications regarding family planning and close-up images of the genitals of 2 of Mr. Purbecks previous loves." *Id.* at ¶ 49.

### C. *Termination of Employment*

After his arrest, Purbeck's employer, Ada County, terminated his employment. *Id.* at ¶ 41. Purbeck's permanent file—which the general public may access through Idaho public records requests—now includes an employment record indicating that the reason for the termination was "Conduct Unbecoming a

County Employee." *Id.* According to Purbeck, this record will prevent him from securing government work in the future. *Id.*

### D.  *Criminal Prosecution*

Purbeck alleges that Kitchens, Herskowitz, and Assistant United States Attorney Justin Whatcott ("Whatcott") violated his rights in criminally prosecuting him. According to Purbeck, Kitchens, Herskowitz, and Whatcott filed and pursued criminal charges against him based on evidence that they knew was obtained in violation of Purbeck's constitutional rights. *Id.* at ¶ 51-52. Purbeck further alleges that at his First Appearance before a Magistrate Judge, Whatcott impeded his access to *Brady* and *Giglio* materials. *Id.* at ¶ 53. The government has since "hidden the great majority of its evidence" against Purbeck, impairing his ability to prepare for his criminal trial. *Id.*

### 5.  Discussion

Purbeck brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Here, Purbeck alleges claims against federal agents who were not operating under color of state law as well as against Ada County officials. Although § 1983 does provide a cause of action against the Ada County

officials, § 1983 does not provide a cause of action against federal agents not operating under color of state law. However, the Court will liberally construe Purbeck's claims against federal agents as *Bivens* claims.

The United States Supreme Court's decision in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics* permits plaintiffs to sue a federal officer in his or her individual capacity for damages for violating the plaintiff's constitutional rights. 403 U.S. 388 (1971). "Actions under § 1983 and those under *Bivens* are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*." *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991).

### A. *Bivens Claims*

i.    <u>Fourth Amendment Claims</u>

Purbeck has alleged sufficient facts to state plausible Fourth Amendment excessive force claims against Pinette and Coffin. He has similarly alleged sufficient facts to state plausible claims against Harshbarger and Kitchens for violations of his Fourth Amendment right to be free from unreasonable searches and seizures.

#### a)  *Count I: Excessive Force*

Purbeck claims Pinette and Coffin violated his right to be free from excessive force by interrogating him for hours in the hot sun. Purbeck claims he consequently suffered heat-related illness, dehydration, and sunburn.

INITIAL REVIEW ORDER OF AMENDED COMPLAINT BY SCREENING JUDGE - 9

Excessive force claims are "analyzed under the Fourth Amendment's 'objective reasonableness standard.'" *Saucier v. Katz*, 533 U.S. 194, 204 (2001). Courts determine the "reasonableness" of an officer's use of force by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (cleaned up). This analysis "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and requires "careful attention to the facts and circumstances in each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.

Here, Purbeck alleges that Pinette and Coffin forced him to sit in direct sunlight, on a 97-degree day, for over seven hours without food, water, or sunscreen. Am. Comp. at ¶ 10, 30. Purbeck states that he suffered heat exhaustion or heat stroke, disorientation, and extreme physical discomfort. *Id.* Purbeck's assertions that he was complying with the instructions and his description of the uses of force give rise to a reasonable inference that the force was excessive. Accordingly, Purbeck may proceed on this claim.

In contrast to the allegations against the agents, the First Amended
Complaint does not state a plausible claim against Kitchens. Purbeck alleges that
Kitchens "acquiesced to torture and excessive force" and "breached his duty to
provide medical assistance and to comply with clearly established laws." Am.
Comp. at ¶ 25. These are merely conclusory statements. Purbeck has not plausibly
alleged specific facts indicating that Kitchens personally participated in the
allegedly excessive uses of force or that he knew of, yet failed to take action to
correct, the constitutional violations. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th
Cir. 1989). Therefore, Purbeck may not proceed on his excessive force claims
against Kitchens.

### b) *Count VIII: Sexual Assault*

Purbeck alleges that Pinette conducted a search incident to arrest and "spent
at least a solid minute feeling Mr. Purbeck's genitals to humiliate Mr. Purbeck."
Am. Comp. at ¶ 43. Some courts have analyzed civil rights claims involving sexual
assault committed by law enforcement officers under the substantive due process
clause of the Fourteenth Amendment. *See Rogers v. City of Little Rock*, 152 F.3d
790, 796-97 (8th Cir. 1988). But sexual assault claims after seizure are better
classified as "excessive force" claims under the Fourth Amendment. *See Fontana
v. Haskin*, 262 F.3d 871, 881 (9th Cir. 2001). The Fourth Amendment requires that
seizures be reasonable. As part of that analysis, the Court will look to the

countervailing government interests at stake. *Graham v. Connor*, 490 U.S. 386, 396 (1989). There is clearly no government interest in sexual misconduct. *Fontana*, 262 F.3d at 878-80. "Gratuitous and completely unnecessary acts of violence by the police during a seizure violate the Fourth Amendment." *Id*. at 880.

Here, Purbeck alleges Pinette searched Purbeck's groin thoroughly for at least a minute to humiliate him. Am. Comp. at ¶ 43. Purbeck claims Pinette "fondl[ed] the testicles repeatedly." *Id*. Assuming the facts of Purbeck's complaint to be true, Pinette engaged in unreasonable and impermissible touching of Purbeck's genitals during the search incident to arrest. Purbeck has alleged sufficient facts to state a plausible excessive force claim against Pinette.

### c) Count IX: Criminal Conversion

Much of Count IX of Purbeck's Amended Complaint is an elaborate narrative rather than a short and plain statement. *See* Fed. R. Civ. P. 8(a). Although Purbeck titles Count IX "Criminal Conversion – Harshbarger – Nathan Kitchens," the allegations he sets forth are better characterized as Fourth Amendment claims. His allegations fall generally into three groups. First, Purbeck asserts the search warrant was improperly executed because he was not provided with a "constitutionally sufficient warrant" at the time of the search. Am. Comp. at ¶ 46. Second, Purbeck lists property which he claims was seized outside the scope of the search warrant and not included on the inventory sheet. *Id.* at ¶ 48. Finally,

Purbeck contends private communications and intimate images were seized from "warrantless searches" that were not for a "legitimate law enforcement purpose, but to harass and annoy." *Id.* at ¶ 49.

Turning to the first allegation, Purbeck claims that Kitchens invalidly executed the search warrant under *United States v. McGrew*. 122 F.3d 847 (9th Cir. 1997).[2] In that case, the Ninth Circuit stated that "[i]t is the government's duty to serve the search warrant on the suspect, and the warrant must contain, either on its face or by attachment, a sufficiently particular description of what is to be seized." *Id.* at 850. Notably, however, *McGrew* may no longer be good law given the Supreme Court's decision in *United States v. Grubbs*, 547 U.S. 90 (2006). "It is not clear whether *Grubbs II* overrules the Ninth Circuit's precedent on the requirement to present a copy of the warrant to the owner of the premises at the time of the search." *United States v. Hector*, 474 F.3d 1150, 1154 (9th Cir. 2007).

Here, Purbeck states that when the agents searched his home, he was given a warrant with an attachment which may have contained a description of "the place

---

[2] Plaintiff misreads the *McGrew* decision in his complaint. Plaintiff alleges that that federal agents held him in his backyard "unlike the expectation of the Mcgrew court that a searchee would be allowed to witness a search." Am. Comp. ¶ 46. But the subjects of search warrants are not entitled to witness a search under *McGrew* or any other law. *See Michigan v. Summers*, 452 U.S. 692, 704-05 (1981) ("If the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his home. Thus, for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause *implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.*") (emphasis added).

to be searched … and possibly the items to be seized but not the affidavit." Am. Comp. at ¶ 47. According to Purbeck, however, he was "only allowed to hold the warrant for mere moments." *Id.* Before he could "view it long enough to verify anything," Purbeck alleges that "Kitchens ordered it removed from his hands." *Id.* Purbeck thus alleges facts—that agents either briefly presented or did not present a warrant containing a sufficiently particular description of the items to be seized to him—which constitute a valid claim under *McGrew*.[3] Given the lack of legal clarity governing *McGrew*, the Court finds Purbeck has stated a plausible claim.

In his second broad allegation, Purbeck claims that government agents seized numerous items that were outside the scope of the search warrant and not included on the inventory sheet. *Id.* at ¶ 48. "Generally, in a search made pursuant to a warrant, only specifically enumerated items may be seized." *United States v. Giberson*, 527 F.3d 882, 886 (9th Cir. 2008) (cleaned up). "If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140 (1990).

---

[3] Purbeck's specific allegation that an affidavit was not attached to the warrant is not dispositive. *McGrew* requires attaching an affidavit to a search warrant only when the warrant itself does not include a particular description of the items to be seized.

INITIAL REVIEW ORDER OF AMENDED COMPLAINT BY SCREENING JUDGE - 14

Here, Purbeck alleges that Harshbarger led the search team and did not fulfill his duty "to properly identify items seized." Am. Comp. at ¶ 48. Purbeck specifically identifies various materials which he alleges federal agents seized illegally, including

> [w]ork product from a lawsuit that Mr. Purbeck was involved in Pro-Se, other legally privileged paper documents including documents from his bankruptcy attorney, and trustee, 5 silver coins issued by national mints, $35 Canadian currency, Sealed issues 1-6 of Bitcoin Magazine worth $3000 as of May, 2021, .03 Bitcoin worth as much as $1800 in the past 30 days, a one of a kind art doll who was used as Instagram page star worth over $450, Bank statements belonging to a corporation, along with foreign tax documents for the corporation.

*Id.* Purbeck's allegations that agents seized items not listed on the warrant and not included on the inventory sheet state a plausible Fourth Amendment claim against Harshbarger.

Purbeck's third and final allegation is that federal agents seized photos and private messages obtained through torture and duress. Am. Comp. at ¶ 49. Notably, Purbeck does not allege that these items were outside the scope of the warrant. Instead, he alleges the underlying constitutional violation made the warrant invalid. Purbeck characterizes this search as "warrantless," *id.*, contradicting his other claims that the warrant was not valid *id.* at ¶ 6, was improperly executed *id.* at ¶ 7, 47, and had a particular scope *id.* at ¶ 48. Taking Purbeck's own allegations as true, there is no reason to believe that this search was warrantless. Further, Purbeck alleges no facts beyond the legal conclusion that the seizure was made "to harass

INITIAL REVIEW ORDER OF AMENDED COMPLAINT BY SCREENING JUDGE - 15

and annoy" him rather than to pursue a "legitimate law enforcement purpose." *Id*. at ¶ 49. As such, these conclusions do not state a claim upon which relief can be granted.

For these reasons, Purbeck may proceed on some, but not all, of the Fourth Amendment claims in Count IX of his Amended Complaint.

> ii.       Fifth Amendment Claims

>> a) *Count II: Torture Induced Confession & Count III:*
>> Miranda *Violation*

Purbeck claims the agents violated his Fifth Amendment rights through the solicitation of incriminating answers and passwords before his *Miranda* warnings were given. Am. Comp. at ¶ 28. But an alleged *Miranda* violation cannot give rise to a *Bivens* claim. *See Chavez v. Martinez*, 538 U.S. 760, 772 (2003) ("Rules designed to safeguard a constitutional right . . . do not extend the scope of the constitutional right itself, just as violations of judicially crafted prophylactic rules do not violate the constitutional rights of any persons.").

In addition, Purbeck alleges a *Garrity* violation—that his Due Process rights were violated through "the use of a coerced statement in the form of a password in a criminal proceeding." Am. Comp. at ¶ 31; *see Garrity v. New Jersey*, 385 U.S. 493, 500 (1967). But Purbeck merely recites the elements of a *Garrity* claim. He does not allege specific facts to demonstrate that the allegedly coerced statement

INITIAL REVIEW ORDER OF AMENDED COMPLAINT BY SCREENING JUDGE - 16

has subsequently been used in criminal proceedings. He cannot cast his civil Complaint as a motion to suppress.

For these reasons, Purbeck's claims in Counts II and III of his Amended Complaint will be dismissed.

### b)  Count X: Miranda *Private Right of Action*

In Count X of his Amended Complaint, Purbeck asserts "[t]he law allows for a private cause of action for providing materials to a prosecutor in violation of Miranda." Am. Comp. at ¶ 52. Purbeck cites *Stoot v. City of Everett*, 582 F.3d 910 (9th Cir. 2009), and *Tekoh v. Cty. of L.A.*, 985 F.3d 713 (9th Cir. 2021), to support his alleged private right of action for violation of Fourth and Fifth Amendment rights. Am. Comp. at ¶ 52.

As discussed above, an alleged *Miranda* violation cannot give rise to a *Bivens* claim. *See Chavez*, 538 U.S. at 772. But in the Ninth Circuit, a § 1983, and perhaps a *Bivens* claim, can be brought for violation of Fifth Amendments rights. In *Stoot*, the Ninth Circuit held that coercive police questioning gives rise to a § 1983 claim for violation of the Fifth Amendment only when the statement is "used" in a criminal case, meaning it "has been relied upon to file formal charges against the declarant, to determine judicially that the prosecution may proceed, and to determine pretrial custody status." *Stoot v. City of Everett*, 582 F.3d 910, 925 (9th Cir. 2009).

INITIAL REVIEW ORDER OF AMENDED COMPLAINT BY SCREENING JUDGE - 17

Here, Purbeck alleges federal actors obtained a coerced confession, but does not allege its use in a criminal case. Purbeck therefore has not alleged facts that are sufficient to state a claim upon which relief can be granted.

Purbeck also accuses the government of hiding "the great majority of its evidence" and preventing him from reviewing the evidence before trial. Am. Comp. at ¶ 51. He alleges that Whatcott deliberately impeded his access to *Brady* and *Giglio* materials. *Id.* at ¶ 53.

In *Brady,* the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). A plaintiff has a valid Brady claim when: (1) the prosecution suppresses or withholds evidence, (2) which is favorable to the plaintiff, and (3) its nondisclosure prejudices the plaintiff. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

It is doubtful whether any plaintiff can bring a *Brady*-based § 1983 or *Bivens* claim prior to trial or plea.[4] One circuit "has emphatically and properly confirmed

---

[4] This Court has previously recognized that the Ninth Circuit would likely require a conviction to support a *Brady*-based § 1983 claim. *Hall v. Idaho Dep't of Fish & Game*, No. 2:11-cv-00622-BLW, 2013 U.S. Dist. LEXIS 80528, at *42 (D. Idaho June 6, 2013). The Ninth Circuit has expressly declined to decide this issue. *See Smith v. Almada*, 640 F.3d 931, 941 (9th Cir. 2011). Elsewhere, "courts have held universally that the right to a fair trial is not implicated and, therefore, no cause of action exists under § 1983[]" when all criminal charges have been dismissed before trial. *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999).

INITIAL REVIEW ORDER OF AMENDED COMPLAINT BY SCREENING JUDGE - 18

that *Brady*-based § 1983 claims necessarily imply the invalidity of the challenged conviction in the trial (or plea) *in which the Brady violation occurred*." *Poventud v. City of N.Y.*, 750 F.3d 121, 132 (2d Cir. 2014) (en banc).

Here, Purbeck states merely the legal conclusion that *Brady* materials have not been disclosed. He does not allege facts related to the nature of the evidence, its alleged withholding, or the prejudice he suffered as a result. He also fails to allege a proceeding in which he has been deprived of *Brady* material. He states that a *Brady* violation occurred when he was "brought before magistrate Bush for a First Appearance in March," and Whatcott "objected to an order to comply with the Due Process Protection Act of 2020 and the lawful court general order 389." Am. Comp. at ¶ 53. But because this hearing occurred prior to his criminal trial, the facts are not sufficient to make out a viable claim.

Purbeck's allegations that he has been prejudiced because documents have been kept under seal similarly fails. There is no First Amendment right to access sealed search warrants while a pre-indictment investigation is ongoing. *Times Mirror Co. v. United States*, 873 F.2d 1210, 1216 (9th Cir. 1989). "[C]ourts have inherent power, as an incident of their constitutional function, to control papers filed with the courts within certain constitutional and other limitations." *In re Sealed Affidavits(s)*, 600 F.2d 1256, 1257 (9th Cir. 1979).

INITIAL REVIEW ORDER OF AMENDED COMPLAINT BY SCREENING JUDGE - 19

For these reasons, Purbeck's claims in Count X of his Amended Complaint will be dismissed.

**B.    Section 1983 Claims**

    i.    <u>Fourth Amendment Claims</u>

        *a)  Count IV: Unlawful Trespass Without a Warrant*

Purbeck contends Pacheco and O'Meara "breached the 4th amendment by failing to get a warrant to access the home." Am. Comp. at ¶ 34. The Fourth Amendment, which is applicable to the States through the Fourteenth Amendment, "provides in pertinent part that the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" *Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (quoting U.S. Const., amend. IV). The Fourth Amendment protects against unreasonable searches and seizures and "requires, as a general matter, that police procure a warrant before searching or seizing property." *United States v. Ewing*, 638 F.3d 1226, 1231 (9th Cir. 2011).

The Fourth Amendment provides protections against an unconstitutional invasion where a person, including a government employee, has a reasonable expectation of privacy. *See O'Connor v. Ortega,* 480 U.S. 709, 717 (1987) ("Individuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer."). A "search" occurs when a state

actor infringes "an expectation of privacy that society is prepared to consider reasonable." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). A "seizure" of property occurs "when there is some meaningful interference with an individual's possessory interests in that property." *Id*. Moreover, "[a] warranted search is unreasonable if it exceeds in scope or intensity the terms of the warrant." *United States v. Becker*, 929 F.2d 442, 446 (9th Cir. 1991) (cleaned up) (en banc)).

Here, Purbeck claims "[t]he two Ada County employees breached the 4th Amendment by failing to get a warrant to access the home." Am. Comp. at ¶ 34. According to Purbeck, Pacheco (a law enforcement agent) and O'Meara (a "Director of the organization") entered his property at the invitation of federal agents. *Id.* at ¶ 38. Purbeck alleges two interactions between himself and the county employees. He states that Pacheco and O'Meara "asked a series of questions that was indicative of a human resources interview." He also states that he "handed a work supplied hard disk from his pocket and a USB stick" to O'Meara.[5] *Id.* at ¶ 33. Purbeck does not allege that the Ada County officials entered his residence.

---

[5] Importantly, Purbeck has stated that he was an "employee of Ada County." Am. Comp. ¶ 37. Purbeck states that at least one of the items provided to Ada County officials was "work supplied." Taking the Purbeck's own stated allegations as true, the hard disk "seized" was the property of Ada County. Thus, Ada County officials could not interfere with the Purbeck's interest of the hard disk because it was the property of Ada County. Further, Purbeck does not allege any facts giving rise to a reasonable expectation of privacy on the hard disk that would amount to a Fourth Amendment violation. It is unclear whether the "USB stick" was also Ada County property or the property of the plaintiff. If it was the property of Ada County, the result would be the same as the county-owned hard disk. Despite the lack of clarity of the

Neither interaction—the officials asking "human resources interview" questions and Purbeck freely handing items to the officials—constitutes a search or a seizure under the Fourth Amendment. Purbeck claims that he handed the hard disk and USB stick to Ada County officials, but alleges no facts that suggest coercion, persuasion, or compulsion on their part. In fact, Purbeck does not indicate that Ada County officials prompted the transfer. Purbeck simply states he handed them to Ada County officials, with no other factual allegations or claims that the action was anything but voluntary. "If a transfer is voluntary, then it is not a seizure and the fourth amendment's reasonableness standard is simply inapplicable." *United States v. Sherwin*, 539 F.2d 1, 8 (9th Cir. 1976).

Purbeck's other allegations are conclusory. He alleges that "[t]he purpose of their visit was not authorized by the [federal] warrant, and was not for the benefit of the search team." *Id.* Instead, Purbeck alleges the "purpose of the visit" of the two Ada County employees was "for an independent purpose." *Id.* Whatever that independent purpose might be, Purbeck does not claim county officials conducted a search. Further, he does not claim that the county officials went into his house or searched any part of his property. As such, Purbeck has failed to allege fact sufficient to state a plausible claim for relief.

---

ownership of the USB stick, Purbeck's claims are fatally flawed for another reason: Purbeck does not allege that the hard disk or the USB stick were seized at all.

INITIAL REVIEW ORDER OF AMENDED COMPLAINT BY SCREENING JUDGE - 22

Additionally, in the final line of Count IV, Purbeck asserts that "[t]he employees breached their duty by trespassing to real property a common law tort." *Id.* However, Purbeck brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Common law tortious trespass is not a right protected by the Constitution nor created by federal statute. As such, the Purbeck has not stated a plausible civil rights claim.

For these reasons, Purbeck's claims set out in Count IV will be dismissed.

### b) Count V and VI: Destruction of Evidence

Purbeck alleges Pacheco destroyed evidence. Purbeck claims an audio recording was destroyed that "contained impeachment evidence and evidence of torture that was obviously apparent and would be subject to being used for litigation including for criminal defense purposes." Am. Comp. at ¶ 36. He further alleges that Ada County "failed to require Pacheco to preserve evidence" and "allowed Sheriff Bartlett to attempt to use his authority to spoliate evidence of the audio recording destruction." *Id.* at ¶ 39.

As a threshold matter, plaintiffs must plausibly allege a deprivation of a constitutionally protected interest to proceed on a Section 1983 claim. *Karim-*

INITIAL REVIEW ORDER OF AMENDED COMPLAINT BY SCREENING JUDGE - 23

*Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988). When a defendant is denied access to certain exculpatory evidence, federal Due Process rights are implicated. *Miller v. Vasquez*, 868 F.2d 1116, 1119 (9th Cir. 1989). However, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

Here, however, Purbeck does not allege facts showing bad faith. Instead, construing Purbeck's claim broadly, he alleges negligent spoliation of evidence as an independent tort claim against Pacheco. Idaho does not have an independent cause of action for negligent spoliation. *See Raymond v. Idaho State Police*, 451 P.3d 17, 23 (Idaho 2019) ("[W]e decline [Appellant's] invitation to go as far as the Montana Supreme Court in *Oliver* and recognize *negligent* spoliation of evidence as a viable cause of action."). Further, the Supreme Court "has recently and repeatedly said that a decision to create a private right of action is one better left to legislative judgment in the great majority of cases." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004). Congress has prohibited destruction of evidence in a federal investigation, *see generally* 18 USC § 1519, but has not created a private right of action for negligent spoliation.

Purbeck states only that Pacheco made the initial recording. He also makes conclusory allegations that Sherriff Bartlett used his authority to "spoliate

INITIAL REVIEW ORDER OF AMENDED COMPLAINT BY SCREENING JUDGE - 24

evidence." But Purbeck does not allege specific facts indicating that Pacheco,
Sherriff Bartlett, or, for that matter, any other Ada County official, played a role in
the alleged destruction. *Id.* Because there is no cognizable claim for negligent
spoliation, even broadly construing Purbeck's allegations, Purbeck's claim against
Pacheco in Count V and against Ada County in Count VI will be dismissed.

ii.   Other Claims Against Ada County

a) *Count VI: Failure to Supervise* – Monell *liability*

To succeed on his claims against Ada County, Purbeck must meet the test
articulated in *Monell v. Department of Social Services*, 436 U.S. 658, 690-94
(1978). Under *Monell*, the requisite elements of a § 1983 claim against a
municipality, or private entity performing a state function, are the following: (1)
the plaintiff was deprived of a constitutional right; (2) the municipality or entity
had a policy or custom; (3) the policy or custom amounted to deliberate
indifference to plaintiff's constitutional right; and (4) the policy or custom was the
moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*,
237 F.3d 1101, 1110-11 (9th Cir. 2001).

The policy or custom "may not be proved through reference to a single
unconstitutional incident unless proof of the incident includes proof that it was
caused by an existing unconstitutional policy." *Rogan v. City of Los Angeles*, 668
F. Supp. 1384, 1395 (C.D. Cal. 1987) (cleaned up). An unwritten policy or custom

must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Further, a municipality or private entity performing a state function "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010) (cleaned up), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (en banc). If the individual municipal employees did not violate the Constitution, then the municipality is not subject to a *Monell* claim. *See Lowry v. City of San Diego*, 858 F.3d 1248, 1260 (9th Cir. 2017) ("Because the officers' actions were constitutional, the City cannot be held liable under *Monell*.").

In limited circumstances, a "failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). When

"the duties assigned to specific officers or employees [make] the need for more or different training … obvious" and the inadequacy of training is "likely to result in the violation of constitutional right," courts may reasonably conclude that policymakers were "deliberately indifferent" to the need to train employees. *Id.*

Although a failure-to-train theory may support a policy-based claim, the United States Supreme Court has observed that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). A failure to train employees "must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact'" to be an actionable § 1983 policy-based claim, and "deliberate indifference" requires allegations showing that "a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 1359. Ordinarily, to maintain a failure-to-train claim, a plaintiff must allege facts showing a "pattern of violations" that amounts to deliberate indifference. *Id.* at 1366.

An entity's failure to supervise its employees may amount to a policy of deliberate indifference. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011); *see Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) ("Although *City of Canton* addressed a claim of a failure to train, the stringent causation and

culpability requirements set out in that case have been applied to a broad range of supervisory liability claims.").

Purbeck asserts that as his "government employer," Ada County "had a duty to provide medical treatment or water in the face of obvious signs of heatstroke such as slurring words, and an inability to speak cogently for a county employee." Am. Comp. at ¶ 38. Purbeck claims the Ada County officials had a "duty to intervene and provide medical care" to him. *Id.* Although Purbeck arguably alleges a constitutional violation, he fails to satisfy least three of the requisite elements for a § 1983 claim under *Monell*.

First, Purbeck does not allege that Ada County had a policy or custom at issue here. *Mabe*, 237 F.3d at 1110-11. Instead, Purbeck makes the conclusory statement that Ada County "fail[ed] to supervise the employees" and had a "lack of training to determine when providing medical care is mandatory." Am. Comp. at ¶ 38. Neither of these statements include sufficient facts about a specific policy. Purbeck also does not allege specific facts supporting an inference that Ada County was aware of prior incidents "of the same character" such that Ada County must have known of the need for further training. *Mueller v. Auker*, 700 F.3d 1180, 1194 (9th Cir. 2012).

Second, Purbeck fails to explain how a policy or custom at issue might amount to deliberate indifference to his constitutional rights. *Id.* Third, Purbeck

does not allege any facts that suggest a policy or custom was the moving force behind the constitutional violation. *Id.* Thus, even construing broadly Purbeck claims, Purbeck fails to state a claim against Ada County upon which relief can be granted. For this reason, Purbeck's claims in Count VI will be dismissed.

> b) *Count VII: Failure to Provide a Name Clearing Hearing*

Purbeck states that Ada County terminated his employment based on evidence collected in violation of his constitutional rights. Am. Comp. at ¶ 41. He alleges that the county "disseminated terrible things" about him and made a permanant [sic] employment record indicating that the reason for his termination was "Conduct Unbecoming a County Employee." *Id.* According to Purbeck, this publicly accessible record and reputational harm will prevent him from securing government work in the future. *Id.* He asserts he is entitled to respond to Ada County's allegations in a name clearing hearing. *Id.*

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319 (1976). Due process is implicated when, in connection with termination, a public employer makes a charge that might seriously damage the employee's standing and associations in the community, or impose a stigma foreclosing other employment opportunities. *Campanelli v. Bockrath,* 100 F.3d

1476, 1478 (9th Cir. 1996). An at-will employee, though ineligible for a pre-termination hearing, is entitled to a name-clearing hearing. *Eklund v. City of Seattle Mun. Court,* 628 F.3d 473, 484 (9th Cir. 2010) (citing *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 573 & n. 12 (1972)). A name-clearing hearing is required where a non-tenured employee has been stigmatized in the course of a decision to terminate his employment and the employer creates and disseminates a false and defamatory impression about the employee's termination. *Codd v. Velger,* 429 U.S. 624, 627–28 (1977).

Additionally, placing stigmatizing information in a personnel file can trigger a liberty interest under the Fourteenth Amendment. *See Cox v. Roskelley,* 359 F.3d 1105, 1112 (9th Cir. 2004) ("We now hold explicitly that placement of the stigmatizing information in [a plaintiff's] personnel file, in the face of a state statute mandating release upon request, constituted publication sufficient to trigger [a plaintiff's] liberty interest under the Fourteenth Amendment."). Under Idaho Code § 9–340C, all personnel records, including employment history, of public employees are public record, excepting certain personal information.

The Amended Complaint is technically deficient as it fails to expressly allege that the stigmatizing statements that were placed in Purbeck's personnel file were false. Liberally construed, however, Purbeck's Complaint states a plausible

claim that Defendant Ada County denied him a constitutionally required name-clearing hearing.

## 6.   Conclusion

Purbeck may proceed as outlined above. This Order does not guarantee that Purbeck's claims will be successful. Rather, it merely finds that some of Purbeck's excessive force, Fourth Amendment right to be free from unreasonable searches and seizures, and procedural due process claims are plausible—meaning that these claims will not be summarily dismissed at this time but should proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Purbeck's claims. Defendants may still file a motion for dismissal or motion for summary judgment if the facts and law support such a motion.[6]

## ORDER

**IT IS ORDERED:**

1.   Plaintiff's In Forma Pauperis Application (Dkt. 5) is **GRANTED**.

2.   Plaintiff may proceed on his excessive force claims against Defendants Pinette and Coffin as outlined in Count I and VIII.

---

[6] The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under § 1915. Therefore, motions to dismiss for failure to state a claim are disfavored in cases subject to § 1915 and may be filed only in extraordinary circumstances.

Plaintiff also may proceed on his Fourth Amendment claims against Defendants Harshbarger and Kitchens as outlined in Count IX. Plaintiff may finally proceed on his substantive due process claim against Ada County as outlined in Count VII. Plaintiff may not proceed on any other claims against any other Defendants at this time.

DATED: September 27, 2021

B. Lynn Winmill
U.S. District Court Judge