Robert Purbeck
451 W Waterbury Drive
Meridian, ID 83646
208-863-6957
rpurbeck@gmail.com
(Pro-Se)

U.S. COURTS

OCT 13 2022

Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

FEDERAL DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT PURBECK, | Case No.: 1:21-cv-00047-BLW |
| Plaintiff, | |
| vs. | COMPLAINT |
| SA JAMES PINETTE | BIVENS ACTION |
| SA RODERICK FRANKLIN COFFIN III | 42 USC 1983 ACTION FOR MUNICIPAL EMPLOYEES AND ADA COUNTY |
| SA CLARK HARSHBARGER | |
| SSRA DOUG HART | |
| AUSA NATHAN KITCHENS | |
| AUSA MICHAEL HERSKOWITZ | |
| AUSA ALEXANDER SISTLA | |
| AUSA DARCI WARD-CRANE | |
| vs. | |
| ADA COUNTY | |
| DETECTIVE RYAN PACHECO | |
| STEVEN O'MEARA | |
| Defendant | |

# COMPLAINT AND REQUEST FOR A BENCH TRIAL

# JURISDICTION

1.  The District of Idaho has jurisdiction over the following matters. In all charges listed below the events were

    proximately caused by actions performed in violation of the Federal Constitution. All listed defendants

    engaged in constitutional violations against plaintiff that were initiated in the District of Idaho. All of the

MOTION TO SEAL; COMPLAINT - 1

named defendants were within the district of Idaho and caused damage to Plaintiff an Idaho resident on the days of August 19th 2019 – August 21st 2019. All other charges are predicated on constitutional violations occurring during those days.

## THE PARTIES

2. Mr. Robert A Purbeck (interchangeably referred to as "Plaintiff" or "Mr. Purbeck") is an Idaho resident who was employed by Ada County, Idaho as a computer technician at the times of the events covered by charges I-XI. Special Agents Clark Harshbarger (hereafter "Agent Harshbarger"), Roderick F Coffin III (Hereafter "Agent Coffin"), SSRA Doug Hart and James Pinette (Hereafter "Agent Pinette") are all FBI agents. AUSA Michael Herskowitz, Alexander Sistla and AUSA Nathan Kitchens are employed by the DOJ in the Atlanta office. AUSA Darci Ward-Crane is employed at the DOJ in the Boise office. Ada County is a municipal corporation wherein the Boise District court is located and where Mr. Purbeck was employed. Detective Ryan Pacheco is employed by the Ada County Sheriffs office as a property crime detective. Steven O'Meara is an employee of Ada County who reports directly to the Ada County commissioners.

## FACTS RELEVANT TO ALL COUNTS

3. Agent Coffin and Michael Herskowitz swore an affidavit for a search warrant in front of Magistrate Ronald Bush on August 19th, 2019. In the affidavit and sworn testimony Agent Coffin provided knowingly false and reckless statements which he knew to be deliberate falsehoods.[1] Agent Coffin presented transactions from five years previous that had no relation to Plaintiff. The government has admitted that 3 out of 4 IP addresses included in the affidavit did not belong to Mr. Purbeck despite being alluded to as such. And on

---

[1] Michael Herskowitz knowing that the affidavit contained recklessly false information from a known unreliable source used redactions and requested continued sealing of the warrant to prejudice Mr. Purbeck. He also deliberately hid Brady evidence that directly contradicted the agents affidavit. The agent made the statements in the affidavit regarding TDO knowing they were false and the governments evidence proved it. Ultimately Magistrate Vineyard ordered the redactions uncovered and ordered the Brady materials (emails) to be shared with the defense. These were deliberately withheld from defense before the motion to suppress deadlines passed, so they could not be made use of at a critical stage in the prosecution. They had been promised to defense but when pressed Herskowitz knowing they showed deliberate perjury by his agent hid them from the defense.

MOTION TO SEAL; COMPLAINT - 2

the 1 address that was correct the agent made a reckless scrivener's error in the same sentence, rendering no IP information reliable. The correct Ip showed no evidence of a crime. Judge Bush had no way of knowing the testimony was full of mendacity and signed a search warrant based on the knowingly false affidavit.

4.  Mr. Purbeck will refer to testimony taken in open court on September 1st and 2nd 2022 at the Northern District of Georgia court in Newnan Georgia to supplement his memory for the purposes of establishing actionable torts.

5.  On August 21st, 2019 at approximately 7:35 a.m. while leaving for work Plaintiff was leaning in his car to retrieve his coffee mug to refill before leaving for work at the Ada County Courthouse. A man approached and laid a hand upon Plaintiffs shoulder while asking "Robert?" Plaintiff was taken aback that someone would seize him upon his own property and took a moment to comprehend that a swat team was coming up his driveway and front yard with guns drawn. Agent Tucker Heap testified that as many as 8 armed men with guns drawn were visible to Mr. Purbeck. The man who seized Mr. Purbeck was Agent Coffin who quickly introduced himself as such. Agent Coffin lied to the district court that he didn't touch Mr. Purbeck, but later in testimony confessed to illegally searching Mr. Purbeck at a different time. 3-4 agents testified that Mr. Purbeck was subjected to a high-risk search for weapons. [2] Another man later to be determined as Agent Harshbarger showed the front page of a search warrant to Plaintiff and asked if he wanted to read it. Agent Pinette who had also approached said, "There will be time for that later."

6.  Meanwhile, approximately 8 armed agents were swarming the house and screaming at Mr. Purbecks girlfriend and making her dress in front of men without any modesty allowed. There was testimony guns were pointed at her and she was physically removed from a bed at gunpoint and at least temporarily detained. She a disabled person was prohibited from driving her car and had her phone seized from her so she couldn't contact a lawyer or even keep track of medicine timers. An additional 4 various government employees from multiple agencies and a dog entered the home after the initial sweep.

---

[2] Mr. Purbeck does not recall this pat-down for weapons but is aware this would not be illegal under Terry and Summers and has no reason to believe it did not happen. Both Agents Coffin and Pinette made it clear they witnessed this pat-down happen and thus shows that two additional "officer-safety" searches of Mr. Purbeck they testified to were both illegal absent probable cause to arrest.

MOTION TO SEAL; COMPLAINT - 3

7. Agent Pinette seized Mr. Purbeck by grasping his bicep[3] and directing him into the house after a short protective sweep of the house had been performed. Agent Harshbarger demanded the keys to the cars and Mr. Purbeck provided them to the agent. Mr. Purbeck protested that he would be late to work and according to testimony from Agent Coffin the agents told him that Ada County would be expecting him to be missing work that day. This implied to Mr. Purbeck that the investigation was at the behest of Ada County. Agents Pinette and Coffin testified that they told Mr. Purbeck he was free to leave at some point while Mr. Purbeck was on the driveway. Mr. Purbeck does not recall them telling him that, possibly because of the commotion happening or the agents simply lied because that notice is talismanic in the N.D. Georgia. Agent Pinette testified that he informed Mr. Purbeck that if he did not leave right then, that he would be detained for the remainder of the search.

8. Agent Pinette did not release his grasp upon Mr. Purbecks arm and directed him to the kitchen where Agents Coffin and Pinette decided where they would interrogate Mr. Purbeck. Mr. Purbeck was officially detained per Agent Pinette's testimony and was not free to go. The agents testified they chose to interrogate Mr. Purbeck outside to prevent Mr. Purbeck from damaging evidence and for officer safety, it was a quiet place isolated from noise (and social support) and because the house smelled of cat odors. Mr. Purbeck was left with Agent Coffin while Pinette grabbed plastic lawn chairs from the patio and placed them off the patio in direct unobstructed sunlight.

9. At approximately 7:45-7:50 a.m. Agent Pinette came back inside the house and grasped Plaintiffs bicep again and took him outside and showed him to an area in the backyard with 3 chair arrangement he had designed. The chairs were all plastic lawn chairs. One was facing directly into the morning sun while it was rising. Photographic evidence shows an agent blocked Mr. Purbecks access to the house. The curtains were drawn closed so Mr. Purbeck could not see his girlfriend.  The high temperature of the day was 95 F according to certified Government weather data.

---

[3] Agent Pinette also lied to the district court that he did not touch Mr. Purbeck, but later his perjury was exposed on cross-examination when he confessed to touching Mr. Purbeck numerous times during the day including an unlawful 3rd search of Mr. Purbeck.

MOTION TO SEAL; COMPLAINT - 4

10. Agent Coffin left for as a period of time possibly 15-20 minutes based on photographic evidence and a technician report claims he went to a back bedroom where he instructed technicians from government lab Intermountain West to prolong the search by delaying searching for warrant materials until he had completed the custodial interrogation of Mr. Purbeck. The one piece of information Agent Harshbarger seemed to remember was an excessively long initial sweep. But it was not corroborated by any other agent.

## Count I: 4th Amendment Excessive Force - Agent Coffin, Agent Pinette

11. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-10 above and further alleges as follows:

12. Agent Pinette ordered Mr. Purbeck to sit. Mr. Purbeck sat in a shaded seat. He was ordered to stand up and sit in the chair with unobstructed direct sunlight. Mr. Purbeck acquiesced to the authority of the armed agent. Agent Coffin came out after instructing the technicians to delay the search of devices in the office. The sun was in Mr. Purbecks eyes and he could not look at the agents who both sat down still wearing tactical body armor and holstered sidearms. Mr. Purbeck was still holding the coffee mug he had retrieved from his car. Agent Pinette took the mug and went inside to fill it for Mr. Purbeck. Agent Coffin testified he searched Mr. Purbeck's person for cell phones he had in his pockets despite no authority in the warrant to search Mr. Purbeck. Plaintiff provided both his work and personal phones. Pinette seized the phones and took them inside. While inside Agent Pinette grabbed a notepad and a digital audio recorder and removed his tactical body armor. While Agent Pinette was gone Agent Coffin informed Mr. Purbeck that his employer would be by soon to monitor the interrogation. There is a factual dispute pertaining to when the agents told Mr. Purbeck about Ada County's arrival. The agents both lied that a recorder wasn't present.

13. After Agent Pinette returned the two agents began asking Mr. Purbeck questions of a biographical nature. Mr. Purbeck could not look at the agents for more than a second at a time because of the extreme summer sunlight in his eyes. He had to answer questions with his head down or looking to the extremes of his neck rotation to avoid having sunlight directly in his eyes. While looking to his left he saw that his indoor only cat was trying to escape the house through the open sliding patio door. Mr. Purbeck got up to retrieve his cat and was immediately ordered to sit back down and ordered to not stand up again. Agent Pinette got up

MOTION TO SEAL; COMPLAINT - 5

1    begrudgingly and tossed the cat inside the house. Pinette lied to the district court about handling the cat, but

2    his demeanor was very odd something the transcript won't properly capture.

3   14. Asking the biographical questions took a fair amount of time. They wanted to know about drug history,

4    medications Mr. Purbeck took, colleges attended, places he had lived, jobs he had been employed at. Mr.

5    Purbeck began sweating almost immediately after being brought outside. He had not drank any water at all

6    this day and was dehydrated from taking a diuretic pill at night as prescribed by his doctor for hypertension.

7    Agent Pinette monitored the sunlight in Mr. Purbecks eyes and determined periodically that it was

8    necessary to move him to get the maximum blinding affect. To make himself appear more humane he

9    asked Mr. Purbeck if the sun was uncomfortable in his eyes for the benefit of the audio recording, but it

10   was pretext to move him back into direct sunlight. During one of the moves Agent Coffin excused himself

11   and went inside to remove his tactical body armor and to get water. The agents testified that they moved

12   Mr. Purbeck repeatedly until apparently Mr. Purbeck developed a froward attitude and refused to comply

13   with their commands to move any longer. Agents Coffin and Pinette testified that Mr. Purbeck was always

14   in direct sunlight, and they did not provide Mr. Purbeck with water, sunscreen, a hat, or any other safety

15   objects. And then strangely enough testified that the day was pleasant. It begs the question why were they

16   moving Mr. Purbeck repeatedly? The reality was that the day was extremely hot for the northwest, was not

17   safe for continuous exposure and it was uncomfortable for the agents, and so they kept moving Mr. Purbeck

18   for their own benefit. AUSA Sistla tried to argue that this wasn't cruel behavior and that Purbeck didn't

19   suffer heat illness even though his officer's actions acknowledged dangerous conditions were present. [4]

---

23   [4] The FBI in an 11th circuit state had a very different take in recent incident where a Sheriff deputy
24   detained an FBI agent and placed him in the back of a cruiser when the FBI agent was highly uncompliant, came up
     on a terrorist watchlist, had an improper vehicle registration and ordered the deputy to turn off his body camera. The
25   agent was placed in the back of an air conditioned vehicle on a 66F day in Florida. The agent claimed he suffered
     heatstroke after 6 minutes and was taken by ambulance from the scene. The FBI claimed the Sheriff Department
26   overstepped its authority in assessing the health condition of the obstinate, potential terrorist and highly agitated FBI
     agent. The entire video is available for anyone to view online *Burlew, Jeff. "Caught on Bodycam: FBI Agent
27   Chasing Florida Corruption Complaint Ends up Locked in Patrol Car." Tallahassee Democrat, Tallahassee
     Democrat, 13 May 2022, https://www.tallahassee.com/story/news/local/fbi/2020/03/12/fbi-carrabelle-corruption-
28   franklin-county-sheriffs-office-ticket-body-cam-aj-smith-alexis-hatten/4940493002/..*

MOTION TO SEAL; COMPLAINT - 6

15. While still going over biographical details an incredibly angry unidentified agent and at least one other associate ran outside and started screaming at Mr. Purbeck. The angry man had his hand on his gun and was shouting incomprehensibly for some time at Mr. Purbeck. Mr. Purbeck feared for his life. He could not understand what he was being ordered to acquiesce to. Mr. Purbeck would have complied. But could not understand the man. Agent Coffin deciphered the unintelligible screaming to mean "Where is the gun?" Mr. Purbeck informed him that he did own a gun, it had been removed because a previous household member had mental health concerns. The gun was located in Mtn Home at his girlfriends father house where it was safely locked up. The angry man and his associate went back inside still fuming that they did not get a satisfactory answer. Mr. Purbeck had the distinct feeling the agent would have enjoyed using deadly force against Mr. Purbeck.

16. By the time the questioning progressed to non-booking questions both agents had taken a break inside to cool off and Plaintiff had begun sweating profusely and experiencing heat exhaustion. Mr. Purbeck was becoming quite sunburned, very dehydrated, at this point in the day he was drenched in sweat and was not allowed to leave the Summers detention as testified to by Pinette. The agents lied again in the district court that Mr. Purbeck was not drenched in sweat but conceded they wouldn't have been able to tell because Mr. Purbeck was wearing dark clothing. At no point had a Miranda warning been presented by the agents.

17. After an extensive biographical interrogation, one of the agents who had gone inside found that Mr. Purbeck had copies of Ada County work materials on a computer in the house which appeared from that interaction to be the primary nature of their search. Mr. Purbeck had previously been prohibited from seeing the warrant by Pinette and had no idea what the agents were searching for.

18. The invocation of Ada County soon being present for the interview and the questioning about the Ada County data lead Mr. Purbeck to believe this was an investigation performed on behalf of his government employer. This placed Mr. Purbeck in an awkward position because the agents had invoked certain parameters that made being uncooperative with the investigation impossible without due process being implicated. Answering questions truthfully to outside law enforcement was required by Ada County policy. Not complying with the policy would require termination.

MOTION TO SEAL; COMPLAINT - 7

19. The Agents then began asking about websites that could only be accessed through the TOR web browser. Mr. Purbeck truthfully answered that he had visited certain websites that sold drugs and other contraband merchandise.

20. The questioning became more aggressive, the agents started raising their voices at times and told Mr. Purbeck he was being evasive and minimizing behaviors despite Mr. Purbeck telling the truth to the best of his abilities. The agents asked him to recall a number of accounts that he had allegedly created years earlier. Mr. Purbeck could not recall them all in detail. He said he had bought literature on several occasions which was completely truthful. They accused him of using certain screennames.

21. Eventually they came out and asked him about a specific account they wanted him to admit to. They made accusations that were designed to elicit incriminating responses in an unwarned Summers detention.[5] Mr. Purbeck said, "Do I need a lawyer?" At no time had the agents provided a Miranda warning, Mr. Purbeck had been left by this time almost 3 and ½ hours in direct unobstructed sunlight without access to water, drenched in sweat and had been moved repeatedly to follow the sun so that it was in his eyes making cogent thinking more difficult as the discomfort was getting to him. Agent Coffin told Mr. Purbeck that he did not need a lawyer, that they were simply having a conversation. Mr. Purbeck asked to use one of his phones to call for a lawyer. Agent Coffin told him he may not use either of the phones because he could destroy evidence. Mr. Purbeck then asked if he could use Agent Coffins phone to make a call for a lawyer, again he was rebuffed because he could use it to destroy evidence. The agent refused to call a lawyer for Mr. Purbeck. He then reinitiated the interrogation and stated that, "…you better make that call for a lawyer soon, we are conducting simultaneous raids across the country. Only the first person to answer will get a deal from the prosecutor." Agent Coffin did not deny making threats and promises to Mr. Purbeck in the hearing in front of Judge Vineyard. He in fact doubled down that he had used promises of leniency during the interaction. The agent lied to the court though and said he would have allowed Mr. Purbeck to make a phone call, but that is a fact dispute for a fact-finder to determine. Both S.G. and Mr. Purbeck both testified they were unable to see each other during the day and were isolated from each other even though the agents

---

[5] United States v. Herran, No. 20-10157 (9th Cir. Oct. 29, 2021)

lied and said they would have allowed the two to see each other.  The agent who controlled S.G.'s movement was agent Harshbarger who conveniently forgot nearly all details from the day except how long the initial sweep took of the house[6]. [7]

22. The agents demanded the encryption password to a computer inside. They told him they knew about his hacking activities. Mr. Purbeck tried to assess the situation. He had been left outside so long he was extremely sunburned, dehydrated, suffering heat exhaustion and extremely uncomfortable. He had done what he was supposed to and asked for a lawyer and the agents refused to honor the request and had shown no interest in providing basic human needs to Mr. Purbeck. He began to waiver on staying silent as he risked very harmful heat illness and wrongly assumed the agents would provide for those needs once they got what they were looking for.

23. Mr. Purbeck eventually decided he could not handle the heat any longer and hesitantly provided the password to the computer and certain inculpatory admissions in a quid pro quo to get access to water and humane conditions. It's a fact dispute who tried the password, whether it was agent Coffin or Pinette, the parties agree it occurred between 11:09 a.m. and 1:16 p.m. Because of the timeline remaining that was testified to it appears it occurred closer to the 11:09 timeframe.

24. While Agent Pinette was gone Agent Coffin demanded passwords to various accounts which he wrote down on a form that allows the FBI to take control of accounts listed on it. Agent Pinette came back about 10 minutes later and stated the password had not worked. Mr. Purbeck confirmed the password. Agent Coffin told Agent Pinette to bring back a form. About 10 minutes later agent Pinette returned with an

---

[6] This is another occasion where Mr. Purbeck has been prejudiced by his criminal trial being extended out beyond a reasonable time frame. None of the facts have changed. Agents memories have mostly faded. Clark remembered almost no details from the search even though he was search team leader. He has since resigned from the FBI and apparently has a lot of free time to conduct evil endeavors. His memories are apparently full of sick and depraved stories which he regaled the other agents with while waiting to testify such as how he tortured a bear to death in Alaska by shooting it non-lethally in the side, and then killed and desecrated its corpse by emptying a magazine into its left eye, and then another magazine into its right eye. Someone who finds this an amusing story should not be allowed to handle firearms. The FBI is lucky that he quit.
[7] The same type of leniency offered along with the threat of the offer being rescinded even if Miranda warnings had been administered was clearly established to be a violation of the 5th amendment in the N.D. Georgia prior to the search of Mr. Purbecks home. An example is: United States v. Mitchell, CRIMINAL No. 1:17-CR-122-LMM-LTW (N.D. Ga. June 24, 2019) *51 R&R adopted August 16th, 2019
MOTION TO SEAL; COMPLAINT - 9

advice of rights form but did not show the form to Mr. Purbeck until after Agent Coffin made Mr. Purbeck

sign the "Consent to assume Online Identity" form. This form required the government to advise Mr.

Purbeck of his rights which the agents testified they did not do. The agents and not Mr. Purbeck filled out

the form. It was not voluntary. He didn't get to read it before the passwords had been disclosed. Then the

advice of rights form was placed in front of Mr. Purbeck and he was ordered to sign it and then

acknowledge it for purposes of the audio recording.

FD-1086                    **FEDERAL BUREAU OF INVESTIGATION**
Rev. 8-6-2015          **CONSENT TO ASSUME ONLINE IDENTITY AUTHORIZATION FORM**

I, Robert Purbeck                                          , hereby voluntarily authorize
                                        or other agents of the FBI to assume and use
my (or my minor child's) "online identity". I give this consent freely and voluntarily, without fear, threats,
coercion, or promises of any kind. I have been advised of my right to refuse to allow the FBI to assume my
(or my minor child's) online identity, and I hereby voluntarily waive this right. This online identity

25. The agents have steadfastly lied both to the AUSA's and under oath in the district court that they did not

present Mr. Purbeck with a Miranda form. Mr. Purbeck told his court appointed lawyer on September 29th,

2019 that he had been presented with an advice of rights form to sign. Why would he lie to his lawyer? Mr.

Purbeck was mostly concerned at the time that the Miranda form would show that he had voluntarily

surrendered his rights to an attorney and that the government would present that form in court. It is still

baffling to Mr. Purbeck why the agents have hidden that form? It contained the time that it was signed

which would have been approximately 11:09 a.m. But the agents both conceded in the hearing that the

photographic evidence from the search proves it did take approximately 3 ½ hours of continuous

questioning in temperatures reaching 87F before Mr. Purbeck cracked and gave his password.

26. Agent Coffin and Pinette both testified that Mr. Purbecks chair collapsed while he was sitting in it and that

Mr. Purbeck suffered a fall to the ground injuring his knee. Mr. Purbeck alleges it was caused by heat

stress. Agent Coffin in keeping with a weird narrative that Mr. Purbeck was recalcitrant during the

interrogation claimed Mr. Purbeck was leaning the chair backwards to cause the collapse. This despite

repeated testimony and reports that Mr. Purbeck was cooperative and not recalcitrant.  Mr. Purbeck has had

these chairs for the better part of 10 years and still uses them frequently for short sits on the patio, he has

MOTION TO SEAL; COMPLAINT - 10

1   never had another one collapse. Further falling forward and hitting the knee would not happen from leaning

2   back in a chair.

3   27. After the password was given, Agent Coffin went inside and assisted the technicians he had previously told

4   to not collect evidence and the technicians along with Coffin collected the final pieces of evidence which

5   occurred between 11:05 and 11:09 a.m. according to photographic evidence. Both Agents Pinette and

6   Coffin testified they did not play a meaningful role in the search, and that their objective was to interrogate

7   Mr. Purbeck. No additional evidence was seized after 11:09 a.m. However, the interrogation continued for

8   some time longer. Agent Tucker Heap who had the best memory of everyone present at the hearing

9   testified that he was part of the search team and was present from entry until its completion. He was told to

10   guard Mr. Purbeck after the interrogation by Agents Pinette and Coffin concluded. Agent Heap was kind to

11   Mr. Purbeck but he did testify that Mr. Purbeck was in direct sunlight the entire time he was outside with

12   him which amounted to 1 hour to 1 hour and 30 minutes. He claimed when he came outside that the search

13   was 60% complete. When he went back in the search was complete, but that Ada County then arrived to

14   question Mr. Purbeck for some period of time after the search was complete. Detective Pacheco testified to

15   30 minutes to 45 minutes of questioning.

16   28. For all the timelines to line up it appears that Agent Coffin and Pinettes First round of interrogation ended

17   at 11:09 a.m.[8] the second part consisted primarily of Agent Pinette with Coffin present for approximately

18   half of the second part of the interrogation which began after the Miranda and "Consent to Assume" forms

19   were signed. And would have concluded around 12:00-12:30. At 12:30 the temperature was 88F Agent

20   Heap guarded Mr. Purbeck from that time for 1-1 ½ hours. Then Ada County questioned Mr. Purbeck for

21   30-45 minutes with the search and interrogations ending at 2:00pm.  The temperatures during the Ada

---

25   [8] Strangely Magistrate Vineyard got angry with the defense counsel for trying to establish a
timeline for the length of the interrogation. Both Agents Pinette and Coffin agreed on the timeline. In every circuit
26   the length of detention is a crucial piece of determining voluntariness in a confession. 3 ½ hours before confessing in
high temperatures in direct unobstructed summer sunlight without water is an important and relevant data point. This
leads Mr. Purbeck to believe the hearing is a sham hearing and was only provided to pretend that due process was
27   provided to Mr. Purbeck. The search itself was not allowed to be questioned in the hearing even though the 11
searching agents from Boise clearly violated 9th circuit law in the execution of the search. And all members violated
28   the 4th amendment by extending the detention beyond the search for the purposes of interrogation.
MOTION TO SEAL; COMPLAINT - 11

County Interrogation would be 91-93F and NOAA data from the same day showed that at 1:00 pm (solar noon during Daylight savings time) the UV index was 8 using the government provided weather evidence.

29. Before the the arrival of Ada County employees Mr. Purbeck was given a mandatory bathroom break whereby, he was unable to walk to the restroom unassisted and was escorted at all times by Agent Pinette. Agent Pinette did not allow Mr. Purbeck privacy and watched Mr. Purbecks exposed penis while he urinated. At all times he was present in the house despite an obvious medical heat illness emergency Agent Harshbarger harassed him to provide a password to a protonmail email account. This searching for passwords to a protonmail account was not an objective of the warrant, and Agent Harshbarger extended the search by conducting useless activities such as this interrogation and an interrogation of Mr. Purbeck girlfriend which is documented in a 302. Mr. Purbeck was unable to think straight and was highly confused during the interaction.

## Count II – 4th Amendment Unreasonable Search and Seizure – Agents Coffin and Pinette

Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-29 above and further alleges as follows:

30. Agents Coffin and Pinette both testified to unlawful searches of Mr. Purbeck independent of the high-risk search. Both had witnessed the high-risk search and were aware Mr. Purbeck did not have any weapons. They also stated the same in their 302. They tried to manipulate the language from their 302 in a tortured fashion to deceive Magistrate Vineyard, but the truth remains they knew Mr. Purbeck did not have weapons. They were investigating a 2+ year old stale financial cybercrime that Agent Coffin had used perjured testimony to get the warrant for and there was no risk of violence. Both agents had sidearms and body armor and there were 12 other agents on scene most with guns. It is unavailing that the agents would both independently search Mr. Purbeck for weapons and contraband independently. And even more bizarrely to give themselves alibis they both testified they witnessed each other's additional searches of Mr. Purbeck. Searching Mr. Purbecks pockets and telling him to turn over cell phones is a well-established

MOTION TO SEAL; COMPLAINT - 12

violation of the 4th amendment.[9] Both of Mr. Purbecks phones were stored all the way in his jean pockets. They were not visible to the officers. They did not inform Magistrate Bush that they wanted to search Mr. Purbecks person for evidence or contraband, and they have insisted that Mr. Purbeck was not in custody as part of the web of lies they've weaved to hide their deliberate Miranda violation.

31. Since Agent Pinette testified Mr. Purbeck was going to be detained until the completion of the search under the authority granted in Summers; Mr. Purbeck in effect was not free-to-leave. And Agent Coffin seized the phones from Mr. Purbeck even without a warrant to search Mr. Purbeck's person and to prevent him from calling a lawyer when Mr. Purbeck requested his phone back. These are cognizable violations of the 4th amendment under Ganwich.[10]

## Count III –4th, 5th and 14th Amendment Unreasonable Extension of Summers Detention-Detective Ryan Pacheco, Steven O'Meara, SSRA Doug Hart, Agent Pinette

Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-31 above and further alleges as follows:

32. FBI agent Tucker Heap testified that Ada County arrived after he went inside and the search had completed. As a result, the search was prolonged during the interrogation by Ada County by as long as 30-45 minutes. Not only did the Summers court discourage the use of detentions for interrogations, and Ganwich court explicitly prohibited this intrusive detention for interrogation purposes. The purpose of the Summers detention was for officer safety. Detective Pacheco testified that Agent Pinette was present during this interrogation sitting behind him and Steven O'Meara. He also testified that as many as 5 or more of the agents were just hanging out in the backyard. This shows that the search was complete and the agents were just loitering waiting for the Ada County Interrogation to conclude.

---

[9] Ganwich v. Knapp, 319 F.3d 1115 (9th Cir. 2003)
[10] Capolupo v. Cnty. of Humbolt, No. 18-cv-07458-RMI (N.D. Cal. Aug. 20, 2020) *12-15

MOTION TO SEAL; COMPLAINT - 13

33. Detective Pacheco testified he provided a Miranda warning to Mr. Purbeck but did not provide a Garrity warning[11] despite specifically stating his purpose was unrelated to the FBI and was only for information related to Mr. Purbecks employment. That unlawfully obtained information was used to fire Mr. Purbeck the same day; a deliberate violation of Garrity. Detective Pacheco exploited Mr. Purbeck knowing he had to answer the questions for fear of reprisal. All Ada County employees sign a form stating they must cooperate with all internal and external investigations or face discipline. This in Detective Pachecos own words was solely an internal investigation. The sole reason for bringing Steven O'Meara was to make a determination to fire Mr. Purbeck. Detective Pacheco tried to lie about his custody determination in the hearing. However, according to Detective Pacheco Mr. Purbeck was surrounded by as many as 7 armed agents during this last interrogation at the end of the day after the search was completed. Detective Pacheco only stated Mr, Purbeck wasn't in custody and only prophylactically provided Miranda warnings because he was coached to lie to the district court by the Government. In Idaho, Mr. Purbeck was in custody for Miranda purposes, that is why he provided Miranda. In either case he failed to provide Garrity warnings.

34. Detective Pacheco testified that he and Steven O'Meara entered the home of Mr. Purbeck and were escorted through the home by FBI agents. Detective Pacheco specifically stated during the interrogation that the purpose of his visit did not align with the terms of the warrant. His direct quote from the interrogation notes is: "I told Purbeck I didn't have anything to do with why the FBI was there; my concern was Ada County specifically any Sheriff's office exposure."

35. SSRA Hart invited Detective Pacheco to conduct the interrogation according to Detective Pacheco's notes, extended the intrusion into Mr. Purbecks home by as much as 45 additional minutes where Mr. Purbeck was held in sweltering 93F heat without water, and allowed entry into the home by 3rd parties for an impermissible purpose and without authority from the warrant.

## Count IV – 14th Amendment –Failure to Provide Name Clearing Hearing— Ada County

---

[11] United States v. Goodpaster, 65 F. Supp. 3d 1016 (D. Or. 2014) *1023

36. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-35 above and further alleges as follows:

37. Ada County a government employer relied on evidence established through a 4th and 5th amendment violation of Plaintiffs rights and used that evidence to determine it would fire Mr. Purbeck at the end of August 21st, 2019. He was fired for "Conduct Unbecoming a County Employee." This is a dishonorable discharge from county employment. A copy of the employment record is placed in Plaintiffs permanent file and is discoverable by the general public under Idaho FOIA laws. Furthermore, Plaintiff knows based on interactions with former employees that Ada County disseminated terrible things about Plaintiff that requires an opportunity to respond in a name clearing hearing.[12] Ada County breached its responsibilities to provide a name clearing hearing and permanently disseminated dishonorable information about Plaintiff that will preclude him from having an opportunity to continue working in his chosen field within the government sector likely permanently.

## Count V – 4th Amendment - Sexual Assault – Agent Pinette

38. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-37 above and further alleges as follows:

39. When Ada County left Agent Pinette instructed Mr. Purbeck to stand up and "let's get this over with." He performed a search incident to arrest.[13] He searched thoroughly in the groin. He spent at least a solid minute feeling Mr. Purbeck's genitals to humiliate Mr. Purbeck. It was a sexual assault for Mr. Pinettes carnal

---

[12] Board of Regents of State Colleges v. Roth, 408 U.S. 564 (1972) at *573-574
[13] Agent Pinette tried to manufacture an alibi to this incident by claiming that he performed this unlawful search while Ada County officers were present. Coffin testified to witnessing the search even though he wasn't present for this interrogation. However, as Pinette testified he did again search Mr. Purbeck while Ada County was present this would indicate a violation of the holding in Terry and would indicate that Agent Pinette believed Mr. Purbeck to be under arrest the only possible legal additional search. Remember the agents had testified that Mr. Purbeck was searched 3 different times during the day and the warrant did not permit any searches of Mr. Purbeck. Any search minus a high-risk search for weapons was illegal under Summers or if Mr. Purbeck was searched incident to arrest which the agents repeatedly testified was not the case because they were trying to preserve evidence despite violating Mr. Purbecks rights under the 5th amendment as well as the additional holding requiring warnings in Miranda.
MOTION TO SEAL; COMPLAINT - 15

gratification. There was no reasonable justification for the time spent searching specifically fondling the testicles repeatedly.

40. Plaintiff has since sought psychological care, has spent thousands of dollars on behavioral therapy and has been working through PTSD from the incidents of August 21st, 2019. One of the most humiliating experiences of the day, was standing holding the back of a plastic lawn chair, unable to sweat in the heat, with hot uncomfortable skin while Agent Pinetee repeatedly touched his testicles. Agent Pinette had watched with interest earlier Mr. Purbecks exposed penis while he was urinating, there was no possible way Mr. Purbeck was somehow hiding something. This was a breach of duty and normal human dignity; it was a sexual assault by Agent Pinette.

## Count VI – Criminal Conversion –Agent Harshbarger

41. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-40 above and further alleges as follows:

42. After a search of Mr. Purbecks home was complete, he was left with an inventory sheet provided by Agent Harshbarger. Agent Harshbarger did not show the items seized to Mr. Purbeck and unlike the expectation of the Mcgrew[14] court that a searchee would be allowed to witness a search. [15]Rather Mr Purbeck was seized and subjected to unlawful interrogation methods in his own backyard while the search was performed. It would be 9 months before Mr. Purbeck was allowed to see what could be seized, despite an absolute requirement that a constitutionally sufficient warrant be provided at the end of a search.

43. Agent Harshbarger as search team leader has only a few primary responsibilities. One of those requirements is to verify that a copy of the warrant including particularity is provided to the person aggrieved of a search. This is codified in Federal rules of criminal procedure 41(f)(1)(C). By being derelict

---

[14] United States v. McGrew 122 F.3d 847 (9th Cir. 1997)

[15] Circuit Judge Collins concurred in a recent decision and believed that only the first holding in Gannt was overridden by the Supreme Court in a recent decision. Because the case only involved a unintentional violation of rule 41(f)(1)(C) she concurred that suppression was not required in that case, however in Mr. Purbecks case the violation was fundamental as it has prejudiced him the entire time between the search and today more than 37 months later. In that he could not file a proper 41(g) return of property motion without being able to show that the warrant particularity did not allow for the seizure of 99.3% of the items seized. And the items to be seized were not listed on the face of the warrant. United States v. Manaku, 36 F.4th 1186 (9th Cir. 2022) *1191

MOTION TO SEAL; COMPLAINT - 16

in his duties to verify that a copy of the warrant was provided to Mr. Purbeck, Clark Harshbarger established a fundamental violation of Rule 41 (f)(1)(C). Mr. Purbeck was prejudiced by this action because even when he was provided a copy of the warrant including particularity it was maintained under seal. If he had been given a copy of the particularity at the conclusion of the search he could have verified what was allowed to be taken and file a proper 41(g) motion in this court. Because of the sealing order and constant threats of bond revocation if Mr. Purbeck provided the court with a copy of the warrant particularity the court was unable to receive the evidence that a violation of 41(g) had been performed.

44. If a Constitutionally sufficient warrant was ever present at the scene of the search is still a mystery to Plaintiff. He was only allowed to hold the warrant for mere moments. He believes the attachment containing the place to be searched was present, and possibly the items to be seized but not the affidavit. He was not allowed to view it long enough to verify anything. A person standing with the photographer grabbed the warrant from his hands after the FBI Photographer informed Mr. Purbeck, "We don't let you keep these." Referencing the whatever elements of the warrant were in Plaintiffs hands. However, when the warrant was handed back only the inventory sheets and the warrant cover sheet was provided. Clark by refusing to do his job properly violated the McGrew and under Manaku this wasn't inadvertent and that decision allowed the corrupt AUSA's to gain an ability to create a forfeiture order to permanently steal items they knew had no connection to any alleged crimes. 99.3% of the items seized just on the forfeiture order were not authorized by the terms of the warrant. This didn't include the other non-tangible items that were illegally seized such as papers and effects of other household members.[16]

---

[16] Because the drafter of the affidavit came from the Northern District of Georgia he included general warrant sections in the affidavit requesting authorization to seize items from all household members, however the agent failed to place those in the particularity or on the face cover of the warrant. The government has stated that they do not even believe any part of the warrant was required to be on scene because the 11th circuit allows the use of explicit general warrants. The government has also seemingly admitted that they seized many items not authorized by the warrant at all. While still maintaining that they were authorized to seize 10,000 gift cards absolutely not allowed by the warrant and while they lied to this court that it was contraband they have not shown how they had authority to seize them nor have they shown how they were contraband. And how can an agent look at a gift card and determine it is contraband without running the gift card through checks that violate Arizona v Hicks without a properly tailored warrant. These are not items like drugs that can be readily identified as illegal.

MOTION TO SEAL; COMPLAINT - 17

45. As search team leader Agent Harshbarger had a duty to properly identify items seized. Items that have been identified in the subsequent 37 months that were not authorized to be seized and were not included on the inventory sheet include: Diaries, personal papers and effects of other members of the household, Work product from a lawsuit that Mr. Purbeck was involved in Pro-Se, other legally privileged paper documents including documents from his bankruptcy attorney, and trustee, 5 silver coins issued by national mints, $35 Canadian currency, Sealed issues 1-6 of Bitcoin Magazine worth $3000 as of May, 2021, .03 Bitcoin worth as much as $1800 in the past 30 days, a one of a kind art doll who was used as Instagram page star worth over $450, Bank statements belonging to a corporation, along with foreign tax documents for the corporation. Other items may have been seized outside the scope of the warrant, but it was so long before a constitutional copy of the warrant was provided that memories have faded for individual possessions.

## Count VII – Contempt of Court –Michael Herskowitz, Alexander Sistla

46. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-45 above and further alleges as follows:

47. Michael Herskowitz and Alexander Sistla neither of which were parties to an appeal to the 9th circuit[17] in this instant case somehow came into possession of documents sealed by the 9th circuit court of appeals on December 15th, 2021 and subsequent. Despite having more than 3 months to prepare for the suppression hearing the two contemptuous individuals opted against requesting the documents to be unsealed for a limited purpose. They informed defense counsel on September 1st, 2022 they intended to use the sealed documents in a hearing open to the general public. In fact there was a person not involved in the suppression hearing that appeared to be a friend of Coffins who made repeated platonic intimate contact, including touching him on the shoulder, giving high-fives even during testimony and was a bit of a distraction.

---

[17] The Government further released documents sealed in the Northern District of California that were partially sealed and did not respect the redactions allowed by the court. Only Merrick Garland was listed as a party in that suit which is still pending in the 9th circuit. The AUSA's have shown utter disrespect for the powers of the court to seal and should be thoroughly punished through imprisonment. Mr. Purbeck suggests leniency of only 90 days but they deserve as much as anyone else they would prosecute who has released classified documents.

MOTION TO SEAL; COMPLAINT - 18

48. Sistla and Herskowitz were both told by Defense counsel that the documents were sealed by court order. Mr. Purbeck showed the sealing order to his defense attorney. Sistla said he didn't care and was going to present them even so. Later when Magistrate Vineyard wasn't in the courtroom Sistla and Herskowitz made derisive statements about the 9th circuit and defense counsels' argument that 9th circuit law applied to unlawful searches conducted in the district of Idaho. Defense counsel made objections to the entry of the documents. Judge Vineyard seeing they were sealed by a higher court did not take precautions to seal the courtroom of the public and he did not have authority to override a decision of the 9th circuit court of appeals for its own documents.

49. Mr. Purbeck requests jail time for Alexander Sistla and Michael Herkowitz. It seems appropriate that 3 months in USP-Atlanta for deliberately violating the court order would suit the crime as they had 3 months to request unsealing. They also repeatedly threatened bond revocation for Mr. Purbeck if he presented sealed warrant materials. So they are aware of the District of Idaho's and the 9th Circuit Court of Appeals right to seal documents. It offends the honor of the court knowing criminals like Sistla and Herskowitz share documents without permission from the court that sealed them.

50. While Mr. Purbeck is not sure if any damage was done from the presentation of the sealed documents, it appears the government was able to prove that Mr. Purbeck made a mistake on the chair type that was used for the interrogation. Mr. Purbeck recalled the final chair arrangement instead of the initial chair arrangement in that document. After a chair broke and Ada county arrived two wooden kitchen chairs were added to the chair arrangement to make enough seating for everyone present. This may be minutiae but who knows how it affects credibility determinations. The AUSA's also questioned Mr. Purbecks Girlfriend about the declaration she made that she saw Mr. Purbeck through the window. There did not appear to be inconsistencies developed in that questioning, but who knows what damage it could have caused in Magistrate Vineyards mind. Either way it was a due process failure that prohibits Mr. Purbeck from having a fair result to the hearing.

51. As for Magistrate Vineyard, he should be forced to recuse because he cannot be impartial after he himself allowing sealed documents that he did not have authority to unseal presented in open court. He violated due process. Mr. Purbeck does not believe he should be jailed for this but should be removed from the case as his judgment is not sound.

MOTION TO SEAL; COMPLAINT - 19

CHARGE VIII – 4th Amendment - Trespass to Chattels – Darci Ward-Crane, Michael Herskowitz, Nathan Kitchens, Clark Harshbarger

52. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-51 above and further alleges as follows:

53. At ECF-12 Darci Ward-Crane lied to this court that the forfeiture order allowed the seizure of everything seized during the search warrant execution. AUSA's Kitchens and Herskowitz created the forfeiture order without doing any due diligence on the seizure whatsoever. They lied to the grand jury and to the ND Georgia court about what was forfeitable. The warrant clearly did not allow for most of the seizures that occurred under the terms of warrant particularity. The truth as born out in the government provided evidence shows that Michael Herskowitz and Nathan Kitchens had not actually gone through the evidence at that point in time. This document drafted by Ward-Crane was sent 19 months after the search of Mr. Purbecks home. He had been deprived of possessory interest in those items for 19 months. Harshbarger chose to be derelict in handing the warrant particularity to Mr. Purbeck. Because of the governments sealing of the particularity of the warrant Mr. Purbeck couldn't adequately challenge the warrant. In order to preserve evidence, the government chose to lie to the court so it wouldn't have to give anything back until they searched through it.

54. In fact, when the appeal was filed the government decided to look through the things seized and identified dozens of computers and devices it had months earlier lied to this court that were contraband and decided that for example Mr. Purbecks childhood diary wasn't contraband and personal papers and effects belonging to other household members weren't contraband and dozens of computers and electronic equipment didn't comply with the warrant particularity. These were returned to Mr. Purbeck, The problem with this is rather than allowing a judge to make the call. AUSA's Herskowitz and Kitchens have appointed themselves as judges in determining what complies with the warrant after they stole that opportunity from Your Honor by committing perjury. They unlike the court do not concern themselves with the constitution when making their judgements only out of respect to opposing counsel in the criminal case. Decorum is not a valid reason for deciding when to return possessory interest. Government burglary is still burglary.

55. In the ND Georgia AUSA Herskowitz and Kitchens lied to magistrate Vineyard by ECF that the searching agents were from Atlanta and that 11th circuit law should apply to the search of Mr. Purbecks home because if the exclusionary rule were applied to this case using 9th circuit law it would all be excluded and it would punish the wrong agents. But that is a flagrant lie to the court in Atlanta. The two case agents from Atlanta both testified they did not meaningfully conduct a search of the home. All of the other agents were from the Salt Lake Division in the Boise field office of the FBI except one from Newark, NJ. In the Salt Lake Division, the agents would be trained on 10th circuit law as well as relevant 9th circuit law for the Boise agents. The 10th circuit has the strongest exclusionary rule for overseizure. [18], [19] The 10th circuit bases it on number of items overseized. 60 is adequate to invoke the exclusionary rule. In the instant case more than 10,000+ items were overseized that did not comply with the warrant. The 9th circuit and the District of Idaho also agree overseizure is grounds for the exclusionary rule.[20], [21] In the Northern District of Georgia the exclusionary rule is mostly non-existent unless you are wealthy the only remedy is suing the thieves. The government chooses to prosecute in the N.D. Georgia when it intends to steal. For this reason its individual thieves must be held responsible and bankrupted so they stop forum shopping flagrant theft.

# CHARGE IX – 4th Amendment - Extortion – Michael Herskowitz

56. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-55 above and further alleges as follows:

From: Herskowitz, Michael (USAGAN) <Michael.Herskowitz@usdoj.gov>
Sent: Tuesday, June 29, 2021 12:57 PM
To: Andrew Hall <andrew@911law.com>
Cc: Kitchens, Nathan (USAGAN) <Nathan.Kitchens@usdoj.gov>
Subject: Purbeck - Device Imaging/Evidence Review

Andrew,

I hope you are doing well and enjoyed the soccer tournaments/your time off.

In response to your email of June 24, the FBI plans to retain the following computer evidence below. We will provide you with images of these devices upon receipt of drives from you. Please let me know which devices below you wish to image, and the FBI will provide an estimate as to the size and number of drives needed. I highlighted the devices you potentially would want to image first. On the other hand, the ones starred (*) are at least partially encrypted so they may be difficult to image. Of course, your client may provide the encryption keys if he chooses to expedite the imaging and/or return of these devices. And all of the images/data would be produced under the protective order in this case.

---

[18] U.S. v. Medlin, 842 F.2d 1194 (10th Cir. 1988)
[19] U.S. v. Foster, 100 F.3d 846 (10th Cir. 1996)
[20] United States v. Ramirez, 976 F.3d 946, 952 (9th Cir. 2020)
[21] United States v. Atencio, 1:21-cr-0058-DCN (D. Idaho Apr. 29, 2022) *42

MOTION TO SEAL; COMPLAINT - 21

In the interest of good faith, the Government will agree to return the following evidence to your client, so there is no need to image these devices:

57. Every one of the devices in this list including the returned items were listed in the forfeiture order and only a handful of devices had been inspected when Ward-Crane lied to this court that every device seized by the FBI was contraband 19 months after seizure. This includes the 44 devices listed in the retuned items as of this email. Additional non digital devices were returned at a later point. No other digital devices were retuned because the FBI hasn't searched them 37 months later.  However please note that Mr. Herskowitz claimed additional items could be returned at a later point, if Mr. Purbeck provided encryption passwords. And then those unencrypted files would be hidden from him so he can't defend against anything they would find because of the due -process destroying protective order.

58. Mr. Herskowitz has not entertained returning these additional un-searched items even though all of the devices could have been imaged with or without the knowledge of the password and within days of the search. This 37-month ongoing seizure is a violation of the 4th amendment for loss of possessory interest. Predicating return of devices on whether or not Mr. Purbeck gives the prosecutor the work product of his mind amounts to Hobbs Act extortion. These devices were used to conduct commerce throughout the United States and throughout the world.

# CHARGE X – CFAA Civil Fraud and Fraud Generally – Michael Herskowitz, Alexander Sistla, Nathan Kitchens

59. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-58 above and further alleges as follows:

60. AUSA Sistla and AUSA Herskowitz violated the CFAA 18 U.S.C. 1030 (a)(2), (a)(3), and (a)(4) when they downloaded documents from a protected government computer that they knew they were not parties to and not authorized to view. The documents sealed by the 9th Circuit Court of Appeals for this instant case were sealed by the court and were not to be shared outside of the allowances of parties to the appeal. The AUSA's had three months if they wished to unseal them to find out what was in them, but instead they chose to access materials they weren't authorized to see and then distribute them for the purposes of

advancing their careers. This constitutes all the necessary elements to fraud. Since it was Mr. Purbeck that requested the sealing order he was damaged by the AUSA's fraud. The CFAA allows for civil damages.

61. The AUSA's handed a transcript of parts of the grand jury testimony to Mr. Purbeck and it appeared to be redacted by a highlighter and then xeroxed. So Mr. Purbeck read the redactions and transcribed them while the AUSA's watched him. One additional fraud the AUSA's performed was forum shopping to avoid the consequences of an unlawful search and interrogation in the 9th circuit. The grand jury saw right through the fraud. They were aware the government alleges they found the actual evidence they were looking for from a crime occurring in the Northern District of California. The Grand Jury specifically asked Roderick Coffin about the connection to the Northern District of Georgia. They wanted to know why the government was alleging crimes in the ND Georgia when the warrant materials contained no crimes under investigation in the N.D. Georgia. Mr. Purbeck would have been interested in reading what the grand jury asked about charging a non-existent nexus to the Miami area of Florida in the Northern District of Georgia and what other lies the case agents or AUSA's told them to get a true bill. He would also have liked to see what Ada County said. But unfortunately, the government only provided 2-3 pages of transcripts.

## CHARGE XI – 5th Amendment – Roderick Coffin, James Pinette, AUSA Sistla, AUSA Herskowitz, Detective Pacheco

62. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-61 above and further alleges as follows:

63. In the Initial screening order for the amended complaint the court couldn't allow a charge for a fifth amendment violation at that time because the work product of Mr. Purbecks mind had not been presented in a court proceeding. On September 1st and 2nd of 2022, both AUSA Sistla and Herskowitz placed the unlawfully acquired password form on a projector in open court where members of the public were present. The 5th amendment violation of a password released both from promises of leniency, and physical pain and suffering were aired in open court. Coffin repeated the password at least twice if not more times. AUSA Sistla directly asked Mr. Purbeck if he was a hacker by name from the 302 gathered by the agents after the 3 ½ mark during the interrogation. The 5th Amendment violation was complete. The Supreme court in the last term decided that Miranda violations could not be the basis of a Bivens claim. However, they did not

limit Bivens suits for 5th amendment violations. Mr Purbeck would argue that the disclosure by the agents and the AUSA's violated both the 5th amendment and the 4th as they were acquired during an unreasonable prolonged seizure where Mr. Purbeck was not allowed to contact an attorney.

64. Mr. Purbeck was fired on August 21st, 2019 as a result of testimony gathered in violation of Garrity and his 4th amendment right to be free from an unreasonably prolonged search. The county both provided the interrogation notes to the prosecution team and then used the FBI investigation to hide the destruction of litigation hold required audio files. The Ada County detective and several of Mr. Purbecks former co-workers were flown to Atlanta on the same flight as Mr. Purbeck presumably to testify in front of a Grand Jury about statements received in violation of Mr. Purbecks 5th amendment rights.

65. Mr. Purbeck had to testify in court that day because the two agents lied about not recording the unlawful Interrogation during a Ganwich/Summers detention. Further Mr. Purbeck had to tesify because Detective Pacheco destroyed his recording through willful negligence.[22] AUSA's Sistla and Herskowitz knew that the passwords were only revealed through non-voluntary interrogation methods and tried to attempt to show a profoundly cruel and unjust court that if Mr. Purbeck was suffering from heat illness it was his own fault despite being completely dominated by the armed agents in a Summers detention. The Government cannot have it both ways.

Prayer for Relief

---

[22] Pacheco testified he destroyed the recording by changing a setting to change audio on the recorder to record in a different format weeks or months after the recording of Mr. Purbecks interrogation. He did not transfer the audio of Mr. Purbecks interrogation timely despite a firm data retention requirement policy by Ada County to save files that would likely be used in litigation for at least two years. He was not upset about losing Mr. Purbecks interrogation in the least. He also lost the audio of a confession of a child molester/rapist which was his main concern. He took it to IT who did not record a servicenow ticket a requirement for Ada County IT. The county did not comply with any of its own policies and therefore the loss of data was negligent and potentially a child molester/rapist is free because of the negligence and Mr. Purbeck had to testify.

MOTION TO SEAL; COMPLAINT - 24

66. Wherefore, The Plaintiff claims monetary damages greater than $500,000 against Agents Pinette, Coffin, Harshbarger in an amount to be determined at trial, plus costs, and any further relief this honorable court determines appropriate and necessary.

67. Wherefore, The Plaintiff claims monetary damages greater than $1,000,000 against Ada County, Steven O'Meara, and Ryan Pacheco in an amount to be determined at trial, plus costs, and any further relief this honorable court determines appropriate and necessary.

68. Wherefore, The plaintiff claims monetary damages greater than $1,000,000 against Alexander Sistla and Michael Herskowitz in their investigative functions for extortion and/or due process violations in an amount to be determined at trial, plus costs, and any further relief this honorable court determines appropriate and necessary.

69. Wherefore, The plaintiff claims damages of $1 against AUSA Darci Ward-Crane, AUSA Nathan Kitchens, AUSA Michael Herkowitz and AUSA Sistla. He requests jailing for the Contempt against the honor of the court, bar referrals for their actions, including fraud, and contempt and sanctions as provided by the Due Process Protection Act up to and including dismissal of charges as determined by a careful reading of the intent of Congress for violations of the Act for deliberately hiding Brady materials during critical stages in the prosecution and for committing fraud on the court.

70. Mr. Purbeck requests injunctive relief from any consequence arising from the use of documents sealed in this instant case in the unrelated criminal case, and the prompt jailing and loss of attorney privileges in the district of Idaho and 9th circuit for Mr. Sistla and Michael Herskowitz. They should be a pariah for knowingly distributing sealed documents.

71. Mr. Purbeck humbly requests the court take judicial notice of the warrant particularity and allow Plaintiff to amend his 41(g) return of property form in a manner that allows the court to make determinations of what constitutes forfeitable property and take that tyrannical power away from Mr. Herskowitz.

Signed this ___11th__ day of October 2022

*Nt & RM* /s Robert Purbeck

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION TO SEAL; COMPLAINT - 26