# EXHIBIT 2

**SEALED**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

UNITED STATES OF AMERICA

v.

ROBERT PURBECK,

    Defendant.

CRIMINAL ACTION FILE

NO. 3:21-cr-4-TCB

## O R D E R

This case comes before the Court on Defendant Robert Purbeck's objections [92] to Magistrate Judge Russell G. Vineyard's order and report and recommendation ("the R&R") [87]. The R&R recommended denying Purbeck's motions to suppress [25, 26, 27, 38, 39] and dismiss [30].

## I.   Background[1]

Purbeck is charged with computer fraud and abuse, wire fraud, and access device fraud in connection with a series of computer breaches involving medical practices in Georgia and Florida, and a breach involving the City of Newnan, Georgia.

The indictment alleges that Purbeck purchased access credentials on a criminal marketplace and used these stolen credentials to access the victims' computers and steal medical records, police reports, and other sensitive documents.

The indictment alleges that Purbeck then threatened to disclose and sell stolen patient files unless the victim—an orthodontist in Wellington, Florida—paid a ransom demand.

Finally, it alleges that Purbeck identified the names and social security numbers of the orthodontist's minor children and threatened to disclose and sell their personal information.

---

[1] Purbeck does not specifically object to the majority of the magistrate judge's factual findings. Accordingly, the Court adopts the magistrate judge's recitation of the factual background as set forth in the R&R [87] but provides a brief summary here.

On December 13, 2021, Purbeck filed three motions [25, 26, 27] to suppress and a motion [30] to dismiss.[2] He seeks to suppress searches and seizures related to a search of his residence, email searches, and a search of one of his computers. He also seeks to suppress certain statements he made during the execution of a search warrant at his residence. Finally, he seeks to dismiss the indictment against him for improper venue.

On May 18, 2023, Judge Vineyard issued an R&R [87] that recommends denying Purbeck's motions. Purbeck filed objections [92] to the R&R. The Government did not respond to Purbeck's objections, which are now ripe for this Court's review.

## II.  Legal Standard

"A district judge may refer to a magistrate judge for recommendation a defendant's . . . motion to suppress evidence . . . or any matter that may dispose of a charge or defense." FED. R. CRIM. P. 59(b)(1). "Within 14 days after being served with a copy of the

---

[2] Purbeck filed amended motions [38, 39] to suppress relating to the home and email searches.

3

recommended disposition . . . a party may serve and file specific written objections to the proposed findings and recommendations." FED. R. CRIM. P. 59(b)(2).

"The district judge must consider de novo any objection to the magistrate judge's recommendation. The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." FED. R. CRIM. P. 59(b)(3).

A district judge has a duty to conduct a "careful and complete" review of a magistrate judge's R&R. *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. Unit B 1982)). This review may take different forms, however, depending on whether there are objections to the R&R. The district judge must "make a de novo determination of those portions of the [R&R] to which objection is made." 28 U.S.C. § 636(b)(1)(C). In contrast, those portions of the R&R to which no objection is made need only be reviewed for "clear error." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (per curiam) (quoting

4

*Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir.

2005)).[3]

## III.   Discussion

Purbeck objects to the magistrate judge's recommendations with

regard to each of his motions. Accordingly, the Court will address each

motion—and Judge Vineyard's findings and conclusions related

thereto—in turn.

### A.   Motion to Dismiss

Purbeck objects to "venue as to Counts 4 and 8." [92] at 1. "[A]

party that wishes to preserve its objection must clearly advise the

district court and pinpoint the specific findings that the party disagrees

with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009).

---

[3] *Macort* dealt only with the standard of review to be applied to a magistrate judge's factual findings, but the Supreme Court has indicated that there is no reason for the district court to apply a different standard to a magistrate judge's legal conclusions. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Thus, district courts in this circuit have routinely reviewed both legal and factual conclusions for clear error. *See Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1373–74 (N.D. Ga. 2006) (collecting cases). This is to be contrasted with the standard of review on appeal, which distinguishes between the two. *See Monroe v. Thigpen*, 932 F.2d 1437, 1440 (11th Cir. 1991) (holding that when a magistrate judge's findings of fact are adopted by the district court without objection, they are reviewed on appeal under a "plain error standard" while questions of law always remain subject to de novo review).

"Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988) (citing *Nettles*, 677 F.2d at 410 n.8).

"[A] party does not state a valid objection to an R&R by merely incorporating by reference previous filings." *Hammonds v. Jackson*, No. 1:13-cv-711-MHS, 2015 WL 12866453, at *6 n.2 (N.D. Ga. May 18, 2015).

Purbeck's objection to "venue as to Counts 4 and 8" does not indicate the conclusions of law or findings of fact in the magistrate judge's R&R to which he objects. It merely incorporates by reference his motion to dismiss before making evidentiary arguments. Because they were not properly objected to, the magistrate judge's findings of law and fact with respect to Purbeck's motion to dismiss are reviewed by this Court only for clear error. *See Macaort*, 208 F. App'x at 784.

Purbeck contends the indictment should be dismissed for lack of venue because he never entered the Northern District of Georgia. The Government, however, asserts that because the indictment contains a proper statement of venue, and the sufficiency of venue is a question

6

left for the jury, Purbeck's motion to dismiss should be denied. The magistrate judge agreed with the Government and recommended that Purbeck's motion be denied because the indictment—returned by a properly assembled grand jury—alleged venue within the judicial district of this Court. The Court agrees with the magistrate judge and will overrule Purbeck's objections and deny his motion to dismiss.

All defendants have the right to be tried in the state and district where their crimes were committed. U.S. Const. amend. VI.; U.S. Const. art. III, § 2, cl. 3.; FED. R. CRIM. P. 18. However, an indictment cannot be subjected to pretrial dismissal on the ground of insufficient venue. *United States v. Ruiz-Murillo*, 736 F. App'x 812, 818 (11th Cir. 2018) (per curiam).

"[A] court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987). "It is by now well-settled that venue is an essential element of the government's proof at trial." *United States v. Snipes*, 611 F.3d 855, 865 (11th Cir. 2010).

7

Therefore, "a jury must decide whether the venue was proper." *Id.* If a grand jury returns a facially valid indictment containing a proper statement of venue, pretrial determination of venue on the merits is improper because the issue is reserved for a jury's determination. *Id.* (citing *Costello v. United States*, 350 U.S. 359, 363 (1956)).

An indictment is facially valid if it "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Jordan*, 582 F.3d 1239, 1245 (11th Cir. 2009). The second and third requirements are not contested by Purbeck, so the Court examines only whether the indictment properly sets forth a sufficient allegation of venue.

In conducting that examination, neither the evidence proffered in Purbeck's motion to dismiss, nor the arguments in his objection to the R&R can be considered. When ruling on a motion to dismiss, the Court must confine its inquiry to the allegations in the indictment viewed in

the light most favorable to the Government. *United States v. Sharpe*, 438 F.3d 1257, 1259 (11th Cir. 2006). "By now it has become well-established that '[t]he sufficiency of a criminal indictment is determined from its face.'" *Id.* at 1263 (quoting *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004)). Therefore, it would be improper for the Court to consider anything beyond the indictment itself. *Id.*

Counts four and eight of the indictment each allege that the crimes were committed, in part, "in the Northern District of Georgia and elsewhere." [1] at 6. These allegations are sufficient to allege venue. *See United States v. Yonn*, 702 F.2d 1341, 1348 (11th Cir. 1983) (finding an allegation of an offense "in the Northern District of Florida and elsewhere" sufficient to set forth the offense charged); *United States v. Williams*, No. 1:10-cr-150-TCB-AJB, 2010 WL 3488131, at *4 (N.D. Ga. Aug. 2, 2010), *report and recommendation adopted,* No. 1:10-cr-150-TCB, 2010 WL 3488130 (N.D. Ga. Aug. 30, 2010) ("An indictment need not specify the exact location of the offense, but rather must be sufficiently specific to allege that the crime was committed within the jurisdiction of the court. . . . Inasmuch as the indictment alleges that

9

the offenses occurred with the Northern District of Georgia, the indictment is properly pleaded.").

The allegation that *any* part of either count occurred "in the Northern District of Georgia and elsewhere" establishes jurisdiction to adjudicate the *entire* offense in this Court. *See United States v. Lombardo*, 241 U.S. 73, 77 (1916) ("[T]he whole may be tried where any part can be proved to have been done . . . .").

Because counts four and eight of the indictment each adequately set forth the element of venue for each charged offense, the Court will adopt the magistrate judge's recommendation and overrule Defendant's objections as to venue.

### B.    Motion to Suppress Email Searches

Purbeck objects to the R&R's conclusion that the Court had jurisdiction to issue an order under 18 U.S.C. § 2703(d) and to issue three search warrants for his email accounts. Purbeck asserts that the Court did not have jurisdiction over any alleged offense of his being

10

investigated and thus was not a court of competent jurisdiction to issue the § 2703 order or the warrants.

Purbeck's argument is based on Rule 41 of the Federal Rules of Criminal Procedure, which sets limits on federal judges' authority to issue search warrants. *See* FED. R. CRIM. P. 41(b)(1) ("[A] magistrate judge with authority in the district . . . has authority to issue a warrant to search for and seize a person or property located with the district.").

Importantly, however, Congress recognized the limitations set by Rule 41 when it passed the Stored Communications Act ("SCA"), which provides an independent statutory basis for federal judges to issue warrants for records related to electronic communications.

The SCA permits a "court of competent jurisdiction" to "require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication." 18 U.S.C. § 2703(a). The statute defines "a court of competent jurisdiction" to include "any district court of the United States (including a magistrate judge of such a court) . . . that has jurisdiction over the offense being investigated" or "is in or for a district in which the provider of a wire or electronic

11

communication service is located or in which the wire or electronic communications, records, or other information are stored." 18 U.S.C. § 2711(3)(A).

The issue is thus whether this Court had jurisdiction over the offense being investigated. This case involves the investigation of a hacking and extortion scheme through which Purbeck allegedly obtained and posted (or threatened to post) for sale information of thousands of medical patients located in Georgia. The search warrant affidavits explained that undercover transactions occurred within the Northern District of Georgia. Additionally, the "affidavits mentioned multiple transactions processed from an AlphaBay vendor account linked to Purbeck that were processed by an Atlanta-based Bitcoin payment processor." [44] at 9–10 (citations omitted).

Purbeck's argument that the issuing magistrate judges lacked jurisdiction over his alleged offenses is without merit. There was a clear jurisdictional basis in each of the warrants, and this Court was a court of competent jurisdiction under the SCA to issue the § 2703(d) order and the three search warrants. Accordingly, Purbeck's jurisdictional

objections to the § 2703 order and the three search warrants for his
email accounts are overruled.

## C.  Motion to Suppress Statements and Passwords

Purbeck objects to the magistrate judge denying his motion to
suppress certain statements he uttered during the execution of the
search warrant on his home. Included in those statements were his
computer and online passwords as well as consent to access his online
accounts. He objects on three grounds, arguing that (1) he was in
custody when interrogated and therefore should have been read his
*Miranda* rights; (2) his statements and password disclosures were
involuntary and coerced;[4] and (3) he requested an attorney during the
search, and law enforcement denied that request.

---

[4] Beyond generally objecting to the R&R's conclusion that his statements
were voluntary, Purbeck simply incorporates by reference the arguments in his
motion and does not point to specific factual findings or legal conclusions with
which he disagrees. As discussed above, these conclusory objections need not be
considered by the Court. *Marsden*, 847 F.2d at 1548. Accordingly, finding no clear
error in the R&R, his objection to the conclusion that his statements were voluntary
will be overruled.

### 1.   Custody[5]

On August 21, 2019, FBI Agents arrived at Purbeck's Idaho residence to execute a search warrant. The warrant had been obtained two days prior from a magistrate judge in the District of Idaho based on the FBI's identification of Purbeck as an individual suspected of being involved in a series of computer intrusion attacks.

The agents were armed and wearing body armor. They observed Purbeck exit the residence and walk to his vehicle. The agents then approached Purbeck and conducted a brief safety search of his waist area for weapons. Agents then knocked on the front door, entered the residence, and conducted a safety sweep. Agents Robert Coffin and James Pinette introduced themselves to Purbeck and informed him that

---

[5] As an initial matter, Purbeck asserts—as he did before the magistrate judge—that Ninth Circuit law should control this motion. While the Court is inclined to agree with Purbeck that the agents' actions, taken in Idaho, should be controlled by Ninth Circuit law under the *lex loci* approach, it also agrees with the magistrate judge that it "need not decide whether Ninth or [Eleventh] Circuit law applied because" the result was the same under either circuit's precedent. [87] at 29 (citing *United States v. Maley*, No. 13-3696 RB/KK, 2020 WL 1041545, at *6 (D.N.M. March 3, 2020)).

That said, because Purbeck addressed only Ninth Circuit caselaw in his objections—and because the result is the same regardless of the applicable law—the Court will consider the objections under Ninth Circuit precedent.

the FBI was executing a search warrant but that he was not under arrest. They asked him if he was willing to speak with them. Purbeck agreed to speak with the agents.

After entering the home, the agents informed Purbeck that if he chose to stay while they conducted the search—which he was not required to do—his movements would be limited. Agents decided to conduct the interview with Purbeck in the home's fenced-in backyard.

The interview was conducted from plastic yard chairs. Purbeck claims that he was forced to sit in a chair that was in the direct sun despite his efforts to sit in a different chair. He also claims that when he attempted to retrieve his cat after it ran into the yard, agents ordered him to sit back down. The interview was conducted around 8 a.m., and the weather was "cool" and "pleasant."

Throughout the interview, the agents moved their chairs to stay in the shade. Purbeck claims, however, that his chair was in the direct sunlight throughout the interview despite moving his chair. He did not appear dehydrated, sick, in pain, or sunburned. He did not ask for food,

water, medication, a hat, or sunscreen. He was allowed to use the bathroom, but he was escorted by an officer.

Later, while Purbeck was being interviewed by individuals from Ada County, Idaho, the FBI agents learned that Purbeck had a USB drive in his pocket. At that time—realizing that his person had not yet been fully searched—Agent Pinette conducted a five-to-ten second search of Purbeck's person for weapons and evidence. The interview and search of the premises concluded around 2 p.m.

Purbeck objects to the R&R's conclusion that he was not "in custody" for *Miranda* purposes during the interview at his residence.[6] The magistrate judge found that he was "unrestrained in a familiar environment; he was never advised that he was under arrest or that he could not leave; and his freedom of movement was not restrained . . . ." [87] at 34.

"A person is 'in custody' for the purposes of *Miranda* if there was 'a formal arrest or restraint on freedom of movement of the degree

---

[6] The magistrate judge concluded—and the Court agrees—that the questioning "clearly constituted interrogation." [87] at 30. What is at issue, however, is whether the interrogation was "custodial" for *Miranda* purposes.

16

associated with a formal arrest.'" *United States v. McKee*, 157 F. Supp.

3d 879, 889 (D. Nev. 2016) (quoting *Thompson v. Keohane*, 516 U.S. 99,

112 (1995)). In other words, "the subject of the inquiry is whether a

reasonable innocent person in such circumstances would conclude that

after brief questioning he or she would not be free to leave." *United*

*States v. Medina-Villa*, 567 F.3d 507, 519 (9th Cir. 2009) (quotation

omitted). This is an objective test, and the "subjective views of the

officers or the individual being questioned" are irrelevant to the

calculus. *United States v. Bassignani*, 575 F.3d 879, 883 (9th Cir. 2009)

(quotation omitted).

A person can be "in custody" in their own home. *See Orozco v.*

*Texas*, 394 U.S. 324 (1969). That said, "[a]n interrogation conducted

within the suspect's home is not *per se* custodial." *United States v.*

*Craighead*, 539 F.3d 1073, 1083 (9th Cir. 2008). The "analysis considers

the extent to which the circumstances of the interrogation turned the

otherwise comfortable and familiar surroundings of the home into a

'police-dominated atmosphere.'" *Id.* (quotation omitted).

17

Factors considered in determining whether a "police-dominated atmosphere" exists include

> (1) the number of law enforcement personnel and whether they were armed; (2) whether the suspect was at any point restrained, either by physical force or by threats; (3) whether the suspect was isolated from others; and (4) whether the suspect was informed that he was free to leave or terminate the interview, and the context in which any such statements were made.

*Id.* at 1084.

Applying the *Craighead* factors to this case, the Court has no trouble agreeing with the magistrate judge and finding that Purbeck was not in custody during his interrogation.

Purbeck asserts that there were 14 FBI employees present at his home. But Purbeck was only interviewed by two agents: Agents Coffin and Pinette. And while the agents were armed, it is undisputed that neither interviewing agent drew their weapon at any time.

Purbeck claims that he was isolated in his backyard and that his movements were restrained while he was being interrogated. This, he argues, weighs in favor of a finding of "in custody."

The R&R found, and this Court agrees, that Purbeck was not restrained beyond what was necessary for officer safety while they conducted a search of his home. He was told that he was not required to speak with agents and could instead leave the premises. And he was informed that if he chose to speak with agents, his movements would be somewhat restricted while other agents conducted the search.

After agreeing to speak with the agents, Purbeck was in his backyard and his egress was not blocked by agents. He was not restrained or handcuffed. He was told on multiple occasions that he was free to leave. He was permitted to go to the bathroom and was provided coffee upon request. And though he was at times isolated from his girlfriend, who remained inside the home, he never asked to speak with or see her—and the agents testified that he would have been allowed to if he had asked.[7]

---

[7] Purbeck objects that his mobile phones were seized and contends that this weighs in favor of an "in custody" finding. But the R&R rightly concluded that because the search warrant specifically listed his mobile phones as items to be seized, his argument lacks merit.

Purbeck relies on *Craighead* to argue that his home was dominated by police. But the facts in *Craighead* are dramatically different from those here. *Craighead* involved eight law enforcement officers from three agencies (as well as the defendant's Air Force superior officer). The defendant was interviewed in a closed-door, unfinished storage room, and his egress was blocked at all times by law enforcement. Additionally, he was isolated from the military personnel who were specifically brought to provide moral support.

Here, Purbeck was interviewed in an open-air backyard with an unblocked exit gate. He was told he could terminate the interview and leave at any time. Indeed, when the interview reached a natural conclusion, Purbeck left without difficulty. *See United States v. Young*, 622 F. App'x 694, 695 (9th Cir. 2015) (finding that "the totality of the circumstances demonstrates that [defendant] was not in custody" because, even though "many officers forcefully entered [defendant's] residence" early in the morning, defendant's egress remained unblocked, he was told he was not under arrest and was free to leave,

and he was not isolated from those who could provide moral support)
(citations omitted)).

Considering the totality of the circumstances, the agent's actions
did not convert the situation from a voluntary interview into a custodial
interrogation. The Court finds that a reasonable person would have felt
free to leave and terminate the interview at any time. Accordingly,
Purbeck was not in custody, and his objections to this portion of the
R&R will be overruled.

## 2. Attorney Request

Purbeck objects to the R&R's finding that he did not unequivocally
request an attorney. This issue is made moot, however, by the Court's
finding that Purbeck was not subject to a custodial interrogation. *Bobby
v. Dixon*, 565 U.S. 23, 28 (2011) ("[T]his Court has 'never held that a
person can invoke his *Miranda* rights anticipatorily, in a context other
than custodial interrogation.'" (quoting *McNeil v. Wisconsin*, 501 U.S.
171, 182 n.3 (2009))); *see also Montejo v. Louisiana*, 556 U.S. 778, 795
(U.S. 2009) ("If the defendant is not in custody then [*Miranda* and its
progeny] do[es] not apply.").

Accordingly, Purbeck's objections as to his request for an attorney will be overruled.

### D.   Motion to Suppress Home Search

Purbeck objects to the magistrate judge's recommendation to deny his motion to suppress evidence seized from his Idaho home pursuant to an August 19, 2019 search warrant. He first argues that the Court should conduct an evidentiary hearing to determine whether law enforcement agents had—and provided to Purbeck—the complete search warrant (along with all required attachments) at the time of the search. Beyond that, Purbeck makes four specific objections: (1) the search warrant was not founded upon probable cause; (2) the search warrant lacked particularity and was overbroad; (3) the search warrant was stale; and (4) the *Leon* good-faith exception should not apply.

Purbeck first argues that the FBI agents did not have a complete copy of the search warrant when they executed the warrant on his Idaho residence. He contends that the warrant contained references to "Attachment A" and "Attachment B" for the place and items to be searched and seized—but did not contain the attachments themselves.

22

He then asserts that he requires an evidentiary hearing to meet his burden to show that the allegedly missing attachments caused him prejudice or was the result of a deliberate disregard of the rules of criminal procedure.

As an initial matter, the Court agrees with the magistrate judge in his finding that the search warrant, on its face, plainly describes the place to be searched as Purbeck's residential address.

Additionally, it is undisputed that the agents gave Purbeck a copy of the warrant and an inventory list of items that they seized at the conclusion of the search. This largely satisfies the purpose of the presentation requirement set forth in Rule 41 of the Federal Rules of Criminal Procedure.

The Ninth Circuit has held that "the only legitimate interest served by the presentation of a warrant appears to be . . . to head off breaches of the peace by dispelling any suspicion that the search is illegitimate." *United States v. Hector*, 474 F.3d 1150, 1154 (9th Cir. 2007) (citations omitted). The presentation of the warrant—though

missing the relevant attachments—and a list of the seized items accomplishes the aims of the presentation requirement.

Further, to the extent Rule 41 was indeed violated by failure to provide the relevant attachments, such violations "are essentially ministerial in nature," and absent a demonstration of legal prejudice or intentional non-compliance, suppression is not warranted. *United States v. Marx*, 635 F.2d 436, 441 (5th Cir. Unit B 1971) (citations omitted). "[G]iven that a valid search warrant entitled the officers to retrieve" the items seized from Purbeck's home, "resort[ing] to the massive remedy of suppressing evidence of guilt is unjustified." *Hector*, 474 F.3d at 1155 (citation omitted). As in *Hector*, "[t]he causal connection between the failure to serve the [complete] warrant and the evidence seized is highly attenuated, indeed non-existent, in this case." *Id.*

Accordingly, Purbeck's request for an evidentiary hearing will be denied, and his objections as to the presentation of the search warrant will be overruled.

Purbeck next asserts that the search warrant of his Idaho residence lacked probable cause. He asserts first that the information from a confidential human source ("CHS") should be stricken from the search warrant because the magistrate judge could not independently confirm its veracity or accuracy.

The magistrate judge found—and this Court agrees—that the lack of "independent information to assist in assessing the veracity of the source of information" is "compensated for" by the information in the affidavit that shows the basis of the CHS's knowledge. The affidavit notes that the CHS had provided information to the FBI since 2017. Additionally, the affidavit stated that the CHS had communicated directly with the relevant online users, TheDarkOverlord and Lifelock. There is sufficient information in the affidavit to support a finding of probable cause.

Finally, Purbeck makes a conclusory objection to the R&R's holding that probable cause existed even without paragraph 34 of the search warrant affidavit. Because Purbeck does not specifically object to the R&R's findings of fact or conclusions of law—beyond a single

sentence that the R&R is "incorrect," [92] at 20—the Court need not consider this objection.

Accordingly, finding no clear error in the R&R's conclusion that the warrant had probable cause even without the allegedly offending paragraph, the Court will adopt that holding and overrule Purbeck's objection thereto.

Purbeck next objects—in the span of just one paragraph—that he had Fourth Amendment rights in emails sent via the service AlphaBay and that those rights were violated when the Government seized the emails from AlphaBay.

The magistrate judge held—and Purbeck evidently did not object—that Purbeck lacked standing to challenge the seizure of records from AlphaBay in which his emails were found. Because Purbeck did not object to this holding, the Court reviews it for clear error. *Macort*, 208 F. App'x at 784 (quoting *Diamond*, 416 F.3d at 315).

The Court agrees with the magistrate judge that Purbeck lacked standing and finds that his conclusory objections are without merit. His motion and objections are "wholly lacking in sufficient factual

allegations to establish standing." *United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000). Further, "the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities." *United States v. Miller*, 425 U.S. 435, 443 (1976).

Finding no clear error, the Court adopts the R&R and holds that Purbeck lacked standing to challenge the AlphaBay seizures. Accordingly, it will adopt the R&R and overrule Purbeck's objections based on lack of probable cause.

Purbeck next objects that the search warrant lacked particularity and was overbroad. First, he argues that the lack of time frame converts the search warrant into an impermissible general warrant. Second, he summarily objects to the list of items to be seized.

The R&R concluded, and this Court agrees, that because "the crimes under investigation are complex and concerned a long period of time, not simply one or two dates of criminal activity, . . . the absence of a time frame does not render the otherwise particularized warrant unconstitutionally general." [87] at 105 (citations omitted). *See United*

*States v. Nejad*, 436 F. Supp. 3d 707, 729 (S.D.N.Y. 2020) ("While a temporal limitation is one indicia of particularity, . . . courts have recognized that the complexity and duration of the alleged criminal activities may render a time frame less significant than in a case that required a search for a small set of discrete items related to one or only a few dates." (quotations omitted)).

In Purbeck's objection to the list of items to be seized, he simply reasserts his argument that the warrant is not supported by probable cause and contends that this converts the search warrant into an impermissible general warrant. Because the objections are conclusory, general, and without merit, they will be overruled.

Purbeck's next objection is to the staleness of the warrant. He contends that the information in the search warrant affidavit was stale. In his objection, he simply "incorporates by reference" his motion to suppress. As discussed above, this is grounds for overruling the objection. *Marsden*, 847 F.2d at 1548.

Nevertheless, the Court agrees with the magistrate judge in concluding that the information was not stale because probable cause of

28

involvement in electronic-based offenses "remains even longer because deleted files can remain on electronic device." [87] at 111 (citing *United States v. Touset*, 890 F.3d 1227, 1238 (11th Cir. 2018). "The nature of the criminal activity being investigated supported a finding of timeliness." *United States v. Kellogg*, No. 1:12-cr-383-1-CAP, 2013 WL 3991956, at *16 (N.D. Ga. Aug. 1, 2013).

Accordingly, Purbeck's objections as to staleness will be overruled.

Finally, Purbeck objects to the application of the good-faith exception under *United States v. Leon*, 468 U.S. 897 (1984). He argues that the *Leon* good-faith exception should not save the warrant from any constitutional deficiencies.[8]

---

[8] Because the Court has found that the search warrant was indeed based on probable cause, discussion of the *Leon* good-faith exception is moot. Nevertheless, the Court notes that the *Leon* good-faith exception *would* apply in this case if the Court had held that probable cause was lacking.

There is no evidence that the magistrate judge was intentionally misled; there is no evidence that the magistrate judge "wholly abandoned his judicial role"; the affidavit supporting the warrant is not unreasonable on its face; and the warrant is not so facially deficient that executing officers could not reasonably presume it to be valid. *See United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002) (listing the four situations in which the *Leon* exception would not apply). Accordingly, Purbeck's objection to the applicability of the good faith exception is overruled.

### E.    Motion to Suppress Laptop Search and Warrant -1981

Beyond objecting "for reasons set forth in his" motion, Purbeck

does not make specific objections to the magistrate judge's conclusions

about the laptop search or the search pursuant to warrant number 1:21-

MC-1981. He does not "clearly advise the district court and pinpoint the

specific findings that [he] disagrees with." *Schultz*, 565 F.3d at 1360.

Because Purbeck's objections are general and conclusory, the Court

need not consider them. *Marsden*, 847 F.2d at 1548.

Accordingly, it will adopt the R&R as to the laptop search and the

search under warrant -1981. Purbeck's objections thereto will be

overruled.

## IV.   Conclusion

For the foregoing reasons, Defendant's objections [92] to the R&R

[87] are overruled. The Court adopts as its order the R&R [87].

Defendant's motions [25, 26, 27, 30, 38, 39] to suppress and dismiss are

denied.

Additionally, because of the pendency of Defendant's motion [95]

for leave to file an updated motion to suppress, this case is **de-certified**

**ready for trial**, and the motion [95] is referred to Chief Magistrate Judge Vineyard for further proceedings. The Clerk is directed to submit the motion [95] to Chief Magistrate Judge Vineyard for review.

IT IS SO ORDERED this 26th day of July, 2023.

_____
Timothy C. Batten, Sr.
Chief United States District Judge