UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT PURBECK,<br><br>Plaintiff,<br><br>v.<br><br>RODERICK COFFIN III, JAMES PINETTE, and ADA COUNTY,<br><br>Defendants. | Case No. 1:21-cv-00047-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are Roderick Coffin's and James Pinette's motions for judgment on the pleadings (Dkts. 70 & 71). For the reasons described below, the Court will grant both motions.

## BACKGROUND

In August 2019, federal and local law enforcement officials executed a search warrant on the home of the plaintiff, Robert Purbeck. Law enforcement searched Mr. Purbeck's home while agents interrogated him outside. Mr. Purbeck was later indicted for several counts of computer fraud, device fraud, and wire fraud in the Northern District of Georgia. *See United States v. Purbeck*, Case No.

**MEMORANDUM DECISION AND ORDER - 1**

3:21-cr-00004 (N.D. Ga.). That proceeding is ongoing. In January 2021, Mr. Purbeck filed this pro se Complaint alleging several claims against the federal agents, state officers, and federal prosecutors involved in the search of his home, his arrest, and his prosecution. Relevant here, Mr. Purbeck alleged two counts of excessive force against Agents Pinette and Coffin, outlined in Counts I and V of the Complaint.

Mr. Purbeck's claims of excessive force are based upon the defendants' conduct during the search of his home in August 2019. *See Amended Complaint*, Dkt. 19. Agents Pinette and Coffin were among the agents tasked with executing the search warrant for Mr. Purbeck's home. *Id.* at ¶ 7. After the agents informed Mr. Purbeck they had a warrant to search his home, Agent Pinette grabbed Mr. Purbeck's arm and led him outside for the interrogation. *Id.* at ¶¶ 7–10. Agent Pinette ordered Mr. Purbeck to sit down, but when Mr. Purbeck opted to sit in the shade, Agent Pinette instructed him to move to a seat in direct sunlight. *Id.* at ¶ 11. Mr. Purbeck moved seats. *Id.* In his new seat, the sun was directly in Mr. Purbeck's eyes and he was unable to see either Agent Pinette or Agent Coffin who sat across from him. *Id.* He had to answer questions looking down or with his neck at extreme angles to avoid looking directly into the sun. *Id.* at ¶ 12. Mr. Purbeck began immediately sweating and became dehydrated from the sunlight, lack of

**MEMORANDUM DECISION AND ORDER - 2**

water, and a diuretic pill he took the night before. *Id.* at ¶ 13. Agent Pinette would periodically instruct Mr. Purbeck to move his chair, so that Mr. Purbeck remained in direct sunlight. *Id.* Mr. Purbeck continued to sweat and became increasingly sunburned and dehydrated until he eventually started experiencing heat exhaustion. *Id.* at ¶ 16. Whenever Mr. Purbeck started to get up or move, one of the agents instructed him to remain seated. *Id.* at ¶¶ 12, 16. Mr. Purbeck was left in this direct sunlight for over three hours on a day where temperatures reached 95 degrees. *Id.* at ¶ 42.

Later in the day, Agent Pinette conducted a search of Mr. Purbeck's person as a search incident to arrest.[1] *Id.* at ¶ 43. Agent Pinette instructed Mr. Purbeck to stand before searching Mr. Purbeck's groin area, including "repeatedly touching his testicles." *Id.* Mr. Purbeck felt humiliated by Agent Pinette's conduct and has received psychological treatment for PTSD as a result of the search. *Id.* at ¶ 44.

Based on this conduct, Mr. Purbeck alleges two claims of excessive force against Agent Pinette based on the interrogation and the search of his person and one claim of excessive force against Agent Coffin based on the interrogation. The

---

[1] It is not clear from the face of the Complaint whether Mr. Purbeck was arrested following the search of his home. The Complaint does not allege he was arrested, only that he was searched incident to arrest.

**MEMORANDUM DECISION AND ORDER - 3**

defendants have denied all claims and now seek dismissal of Counts I and V. Mr. Purbeck opposes the motions.

## LEGAL STANDARD

A motion for judgment on the pleadings "is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Gregg v. Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (internal quotation marks omitted). It is "functionally identical to a rule 12(b)(6) motion." *Id.* Indeed, when a 12(c) motion is used raise the defense that the plaintiff has failed to state a claim, the motion "faces the same test as a motion under Rule 12(b)(6)." *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988). As such, the Court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *Yoshikawa v. Seguirant*, 41 F.4th 1109, 1114 (9th Cir. 2022) (citations, quotations, and alteration omitted). Here, the defendants urge dismissal for lack of a cognizable legal theory.

## ANALYSIS

The motions before the Court are nearly identical. Mr. Purbeck's allegations against the defendants stem from the same, or related conduct, and both defendants

seek dismissal on the same theories. As such, the Court will address the motions together. The defendants argue that Mr. Purbeck has not stated a cognizable *Bivens* claim or, in the alternative, his claim is barred by qualified immunity. The Court agrees that *Bivens* does not extend to Mr. Purbeck's claim and, accordingly, does not address the defendants' qualified immunity arguments.

A.  *Bivens*

Counts I and V allege claims for damages against the defendants, federal agents, for alleged violations the Fourth Amendment. The Supreme Court's decision in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics* permits a plaintiff to sue a federal officer in their individual capacity for damages for violating a plaintiff's constitutional rights. 403 U.S. 388 (1971). To state a claim for relief under *Bivens*, a plaintiff must plausibly allege that the defendants, while acting under color of federal law, deprived the plaintiff of a right guaranteed by the federal Constitution. *Morgan v. United States*, 323 F.3d 776, 780 (9th Cir. 2003).

That said, the Supreme Court has severely limited the type of claims that are cognizable under *Bivens*. *Marquez v. C. Rodriguez*, 81 F.4th 1027, 1030 (9th Cir. 2023). It has recognized an implied right of action under *Bivens* in only three contexts. In *Bivens* itself, the Court recognized an implied cause of action against

agents from the Federal Bureau of Narcotics for a warrantless search and seizure in violation of the Fourth Amendment. *Bivens*, 403 U.S. at 397. The Court again recognized an implied cause of action against a congressman in *Davis v. Passman* for sex discrimination in violation of the Fifth Amendment. 442 U.S. 228 (1979). And, again, in *Carlson v. Green*, it recognized a cause of action against prison officials for inadequate medical care in violation of the Eighth Amendment. 446 U.S. 14 (1980).

Whether a plaintiff may bring a claim under *Bivens* is evaluated in two steps. *Marquez*, 81 F.4th at 1030. First, the Court considers "whether the case presents 'a new *Bivens* context.'" *Egbert v. Boule*, 596 U.S. 482, 492 (2022). If so, then the Court asks if "'special factors' indicate that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 136 (2017)). "In practice, the Supreme Court's stringent test will foreclose relief in all but the most extraordinary cases." *Marquez*, 81 F.4th at 1030. Although *Egbert* suggests this two-step inquiry can be collapsed into a single question, "whether there is any reason to think Congress might be better equipped to create a damages remedy," the Court will conduct its analysis in two-steps. *Egbert*, 596 U.S. at 492.

1. **New Context**

**MEMORANDUM DECISION AND ORDER - 6**

Despite some similarities to the claims in *Bivens*, Mr. Purbeck's excessive force claims present a new context. "A 'new context' is one that is 'different in a meaningful way from" *Bivens*, *Carlson*, or *Davis*. *Mejia v. Miller*, 61 F.4th 663, 666 (9th Cir. 2023) (quoting *Abbasi*, 582 U.S. at 139). A meaningful difference can be distilled down to "factual distinctions and legal issues that might alter the cost-benefit balance that justified an implied damages remedy in those cases." *Marquez*, 81 F.4th at 1031 (quoting *Snowden v. Henning*, 72 F.4th 237, 244 (7th Cir. 2023)).

The Court's "understanding of a next context is broad." *Hernandez v. Mesa*, 589 U.S. ---, 140 S. Ct. 735, 743 (2020) (internal citations omitted). "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Id*. It may also arise due to differences in:

> [T]he rank of the officers involved; . . . the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory of other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 582 U.S. at 140. Even a "modest extension" will constitute a new context. *Id*. at 147.

**MEMORANDUM DECISION AND ORDER - 7**

The closest analog to Mr. Purbeck's case is *Bivens*. Indeed, Mr. Purbeck's claims parallel *Bivens* in some respects: Both plaintiffs alleged federal officers acted with excessive force during searches of their homes. *See Amended Complaint*, Dkt. 19; *Bivens*, 403 U.S. at 389. Even "almost parallel circumstances," however, are "not enough to support the judicial creation of a cause of action." *Egbert,* 596 U.S. at 495. Mr. Purbeck's claims are distinct from those in *Bivens* in meaningful ways. In *Bivens*, agents from the Federal Bureau of Narcotics forcibly entered and searched Bivens' home without a warrant and arrested him without probable cause. *Bivens*, 403 U.S. at 389. Mr. Purbeck alleges FBI agents used excessive force during an interrogation and search incident to arrest. Importantly, Mr. Purbeck's claims involve a new category of defendant—FBI agents—as well as a different legal mandate as the agents were executing a search warrant at the time of the detention and search.

In *Egbert*, the Supreme Court made clear that a claim presents a new context when it involves a new category of defendant. *Egbert* involved an excessive force claim against a Border Patrol agent who entered the plaintiff's property to check the immigration status of one of the plaintiff's guests. *Egbert*, 596 U.S. at 489. When the plaintiff asked the officer to leave, the officer refused and threw the plaintiff against a car and onto the ground. *Id.* Despite acknowledging the

**MEMORANDUM DECISION AND ORDER - 8**

similarities to *Bivens*—an officer used excessive force against the plaintiff while on the plaintiff's property—the Supreme Court accepted the lower court's conclusion that the claim presented a new context. *Id.* at 494 (citing *Boule v. Egbert*, 998 F.3d 370, 387 (9th Cir. 2021)). The lower court had reasoned that the claim was extension of *Bivens* because the agent was "an agent of the border patrol rather than the F.B.I.," but "it is a modest extension" because both agents were law enforcement officers. *Boule*, 998 F.3d at 387.

    *Egbert*'s acceptance of this reasoning appears to require courts to "draw artificial distinctions between line-level officers of the 83 different federal law enforcement agencies with authority to make arrests and provide police protection." *Egbert*, 596 U.S. at 512 (Sotomayor, J., concurring in part and dissenting in part). Under *Egbert*, then, Mr. Purbeck's claim involves a new category of defendant. That said, courts, including the Supreme Court, have used FBI interchangeably with Federal Bureau of Narcotics. As quoted above, the Ninth Circuit characterized the agents in *Bivens* as FBI agents. *Boule*, 998 F.3d at 387. The Supreme Court did the same in *Abassi*, stating *Bivens* involved "a claim against FBI agents for handcuffing a man in his own home without a warrant." *Abbassi*, 582 U.S. at 140.

    Nonetheless, several courts, applying *Egbert*, have directly addressed

**MEMORANDUM DECISION AND ORDER - 9**

whether claims against FBI agents present a new context and have found that they do. *See Xi v. Haugen*, 68 F.4th 824, 829 & 834 (3d Cir. 2023) (finding excessive force claim against FBI agent constituted a new category of defendant); *Campbell v. City of Yonkers*, No. 19 CV 2117 (VB), 2023 WL 4867459, at *8 (S.D.N.Y. July 31, 2023) (reconsidering decision in light of *Egbert* and finding new context arose where defendants were FBI agents). The Ninth Circuit recently reached the same conclusion in *Massaquoi v. Federal Bureau of Investigations*, finding an excessive force "claim involve[d] a new category of defendants, the FBI agents." No. 22-55448, 2023 WL 5426738, at *2 (9th Cir. Aug. 23, 2023).

The Court agrees that, under *Egbert*, FBI agents must be considered a new category of defendant. Put simply, an FBI agent is not a Federal Bureau of Narcotics agent. Nor is the FBI the successor agency to the Federal Bureau of Narcotics.[2] The FBI is the main law enforcement agency for the federal government, and as such, it has a broad scope. *See* 28 U.S.C. §§ 531–540D. For

---

[2] The Federal Bureau of Narcotics no longer exists. *See Egbert v. Boule*, 596 U.S. 482, 513 (2022) (Sotomayor, J., concurring in part and dissenting in part). In 1973, "the Attorney General transferred the functions of the Bureau of Narcotics and Dangerous Drugs to the DEA." S*ee United States v. Reid*, 517 F.2d 953, 959 (2d Cir. 1975); Drug Enforcement Administration, 38 Fed. Reg. 18380 (July 10, 1973). The FBI existed at the same time as the Federal Bureau of Narcotics. It was created in 1908 as the Bureau of Investigation and renamed the FBI in 1935. *See Perez v. FBI*, 707 F. Supp. 891, 897 n. 2 (S.D. Tex. 1988).

instance, here, the FBI agents were investigating potential cybercrimes. The Federal Bureau of Narcotics, on the other hand, had a specific mandate focused on controlled substances, that is now carried out by the DEA. Indeed, the similarity between FBI agents and the Federal Bureau of Narcotics agents as law enforcement is akin to the similarity between the Bureau of Narcotics and Border Patrol agents, BLM officers, and federal protective agents—all of which the Ninth Circuit have found create new *Bivens* contexts. *See Quintero Perez v. United States*, 8 F.4th 1095, 1104 (9th Cir. 2021) (border patrol agent); *Mejia*, 61 F.4th at 668 (BLM officer); *Pettibone v. Russell*, 59 F.4th 449, 455 (9th Cir. 2023) (federal protective officer). Accordingly, Mr. Purbeck's claims present a new context because they involve a new category of defendant. *Egbert*, 596 U.S. at 492.

  Another reason Mr. Purbeck's claims present a new context is they arise from conduct that occurred during the execution of a search warrant. In contrast, the claim against federal officers in *Bivens* was based on the agents detaining "a man in his own home without a warrant." *Abbasi*, 582 U.S. at 140. A key distinction, then, is the existence of a warrant. *See Mark P. Oster v. Mark W. Burnett*, No. 8:23-cv-02401-DOC (SK), 2024 WL 199520, at * 1 (C.D. Cal. Jan. 18, 2024) (finding existence of warrant created new context); *MT by and through Zubkova v. United States*, No. 3:22-cv-00171-BEN-KSC, 2023 WL 2468948, at

**MEMORANDUM DECISION AND ORDER - 11**

\*11 (S.D. Cal. Mar. 10, 2023) (same). "[W]hen officers obtain a warrant to search an individual's home, they also receive certain limited rights to occupy and control the property." *Id.* (quoting *San Jose Charter of Hells Angels Motorcycle Club*, 402 F.3d 962, 971 (9th Cir. 2005)). This includes a limited right to detain individuals on the property during the search. *See e.g.*, *Bailey v. United States*, 568 U.S. 186, 202 (2013) ("Detentions incident to the execution of a search warrant are reasonable under the Fourth Amendment because the limited intrusion on personal liberty is outweighed by the special law enforcement interests at stake."). The existence of warrant does not, of course, absolve agents of the requirements of the Fourth Amendment. The legal mandate, however, does differ from the mandate under which agents act when they do not have a warrant. This distinction matters here, where the question is if the claims present a new context.

Mr. Purbeck's claims, like the claims in *Massaquoi*, "present[] a new *Bivens* context because the agents had a search warrant, and the claim[s] involve[] a new category of defendants, the FBI agents." *Massaquoi*, 2023 WL 5426738, at \*2. While Mr. Purbeck's claims certainly present only a "modest" extension of *Bivens*, "even a modest extension is still an extension." *Abbasi*, 582 U.S. at 147. These differences may seem trivial to Mr. Purbeck, however, they are meaningful under the Supreme Court's increasingly narrow *Bivens* analysis. Indeed, "[g]iven th[e

Supreme] Court's expressed caution about extending the *Bivens* remedy. . . the new-context inquiry is easily satisfied." *Id.* at 149. And it is here.

### 2. Special Factors

When claims present a new *Bivens* context, the Court must consider whether "special factors" indicate that Congress is better equipped to "weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 136. "[A]ny rational reason. . . to think that Congress is better suited to weigh the costs and benefits is enough to preclude extending *Bivens*." *Meija*, 61 F.4th at 667. The Supreme Court has instructed that the existence of "alternative remedial structures" are "alone. . . reason enough" not to extend *Bivens* to a new context. *Egbert*, 596 U.S. at 493, 497–98 (holding the Department of Homeland Security's grievance procedures precluded extending *Bivens* to a claim against a border patrol agent).

Such an alternative remedial structure exists here. The Department of Justice, as authorized by Congress, has adopted a grievance procedure that is available to individuals such as Mr. Purbeck. In the wake of *Egbert*, courts, including the Ninth Circuit, have repeatedly found that similar agency grievance procedures prevent the extension of *Bivens*. *See e.g.*, *Chambers v. C. Herrera*, 78 F.4th 1100, 1108 (9th Cir. 2023) (expansion of *Bivens* was not warranted where Congress' authorized the "BOP to establish grievance procedures" through the

**MEMORANDUM DECISION AND ORDER - 13**

PRLA); *Pettibone*, 59 F.4th at 457 (expansion of *Bivens* was precluded because aggrieved parties could report misconduct to the Inspector General of the Department of Homeland Security). Several courts have found, specifically, that the FBI misconduct procedures preclude the expansion of *Bivens*. *See Brown v. Duff*, No. 5:23-CT-3136-FL, 2023 WL 9107323, at *3 (E.D.N.C. Nov. 30, 2023); *Mark P. Oster*, 2024 WL 199520, at *1; *McNeil v. Duda*, No. 3:22-CV-50096, 2023 WL 2587884, at *3–4 (N.D. Ill. Mar. 21, 21, 2023).

Particularly instructive here is the Ninth Circuit's recent decision affirming a district court's decision declining to extend *Bivens* to a claim against FBI agents executing a warrant because of the existence of a grievance procedure. *Massaquoi*, 2023 WL 5426738, at *2. The Ninth Circuit concluded "[u]nder Department of Justice regulations implemented pursuant to Congress's statutory mandate, [the plaintiff] may report non-frivolous allegations of misconduct to the Department's Officer of the Inspector General (OIG), which may investigate the allegations or refer them for investigation by another department." *Id.* (citing 5. U.S.C. §§ 301, 413(b)(2), (d); 28 C.F.R. §§ 0.29c(d), 0.29(h)). The existence of this grievance

procedure is dispositive. *See Pettibone*, 59 F.4th at 457.³ "Under *Egbert*, rarely if ever is the Judiciary equally as suited as Congress to extend *Bivens* even modestly. The creation of a new cause of action is inherently legislative, not adjudicative." *Meija*, 61 F.4th at 669. This is not one of those rare cases where the judiciary is better suited. Accordingly, Mr. Purbeck's claims against Agents Coffin and Pinette are dismissed.

### B. Leave to Amend

Courts generally have discretion to grant 12(c) motions with leave to amend. *See e.g.*, *In re Dynamic Random Access Memory Antitrust Litigation*, 516 F. Supp. 2d 1072, 1084 (N.D. Cal. 2007). "A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (internal quotation marks omitted). Here, Mr. Purbeck's claims against Agents Coffin and Pinette cannot be cured by amendment because

---

³ The defendants also suggest that the FTCA may also provide an alternative remedial scheme that precludes an extension of *Bivens*. The Supreme Court, however, has not adopted that view. Indeed, most recently, in *Egbert*, Justice Sotomayor explained "[the defendant] contends that the FTCA offers an alternative remedy for claim's like [the plaintiff's]. This Court does not endorse this argument, and for good reason. This Court repeatedly has observed that the FTCA does not cover claims against Government employees for violations of the Constitution of the United States." *Egbert*, 596 U.S. at 524 n. 7 (Sotomayor, J. concurring in part) (internal quotation and alteration omitted). The Court will not, and need not, conclude otherwise.

there is no cognizable action against either agent under *Bivens*. *Lu v. Kwon*, 660 F. Supp. 3d 977, 986–87 (D. Haw. 2023) (denying leave to amend where claims presented new *Bivens* context and special factors counseled against expanding *Bivens*). Accordingly, Mr. Purbeck's claims against both agents are dismissed with prejudice and without leave to amend.

## ORDER

**IT IS ORDERED that:**

1. Defendant Coffin's Motion for Judgment on the Pleading (Dkt. 70) is **GRANTED**.

2. Defendant Pinette's Motion for Judgment on the Pleadings (Dkt. 71) is **GRANTED.**

DATED: January 29, 2024

B. Lynn Winmill
U.S. District Court Judge